# Richmond

PAT BOATRIGHT V. COMMONWEALTH OF VIRGINIA.

March 11, 1957.

Record No. 4635.

Present, All the Justices.

The opinion states the case.

*Stanley H. Botts*, for the plaintiff in error.

*John Wingo Knowles, Assistant Attorney General (J. Lindsay Almond, Jr., Attorney General*, on brief), for the Commonwealth.

EGGLESTON, J., delivered the opinion of the court.

On this writ of error Pat Boatright, sometimes hereinafter referred to as the defendant, challenges the validity of a judgment entered upon a jury's verdict finding him guilty of the charge, specified in a warrant, of selling a bottle of wine to Otis Barker, in violation of Code, § 4-58. In his assignments of error the defendant challenges the sufficiency of the evidence to sustain the verdict, the admissibility of certain evidence characterized by him as hearsay, and the trial court's rulings on certain instructions.

The Commonwealth proved that on February 24, 1955, about 8:30 p. m., H. L. Lane, an investigator for the Alcoholic Beverage Control Board, received a telephone message from Otis Barker that he (Barker) was going by taxicab to the home of Pat Boatright in Big Stone Gap "to buy some wine." Lane, accompanied by Junior Barnett, a town police officer, followed the taxicab to the vicinity of Boatright's home. They saw Barker get out of the taxicab and go through the gate leading to the Boatright house. They were unable to see what transpired at the house, but within five minutes Barker returned to the taxicab and was driven away.

Lane and Barnett followed the taxicab and stopped it some blocks away. They found the taxicab occupied by Milford Kinsler, the driver, with Otis Barker and the latter's wife as passengers. Lane said he asked Barker "what he had," whereupon Barker "pulled from under his overcoat" and handed to him a four-fifths quart of Roma wine. Neither Mrs. Barker nor Kinsler, the driver, observed whether Barker had the wine at the time he left the taxicab to go to Boatright's house or upon his return therefrom. Mrs. Barker testified that upon his request she gave Barker $1.25 before he left the taxicab to go to the Boatright home. Lane refunded that amount to Barker.

Upon information furnished by Barker a search warrant was sworn out and Boatright's house was searched the same night. The search revealed 39 four-fifth quarts of wine, 23 pints of whiskey, 4 pints of gin, one partly filled pint bottle of whiskey, a partly filled bottle of gin, and some "shot glasses." Included in the assortment were several bottles of Roma wine. All of these intoxicating beverages bore labels showing that they had been purchased at the State store at Big Stone Gap.

Barker testified that on the night in question he was drunk and had

no recollection of what had occurred. He said he did not recall having telephoned for the taxicab or having gone to the Boatright house. He further testified that he frequently bought wine from the local State store and recalled having bought two bottles of Muscatel wine on February 24.

The prosecution undertook to prove that the sales labels attached to the bottles at the State store bore symbols which indicated that certain bottles of wine found in the Boatright house had been purchased from the same State store and at the same time as the bottle of wine which the officers had taken from Barker. Over the objection of counsel for the defendant, H. L. Lane, the Alcoholic Beverage Control investigator, and Barron Lane, Chief of Police of the Town of Big Stone Gap, were permitted to interpret and testify as to the significance of these symbols on the sales labels. They said that six of the bottles of wine found in the Boatright house carried the numbers 4798, 4800, 4801, 4802, 4803 and 4804, showing the respective serial numbers of these sales, and that the bottle taken from Barker carried the number 4799, which showed that as its serial number of sale. They said there were other symbols on the labels which showed that all of these bottles of wine had been purchased from the local State store on February 21, 1955.

Barron Lane testified that he had obtained the information as to the meaning and significance of these symbols from the manager of the local State store. H. L. Lane testified that he had acquired the information partly in the same manner and partly as the result of his experience as an investigator for the Alcoholic Beverage Control Board.

Counsel for the defendant objected to this testimony on the ground that it was hearsay, that it was highly prejudicial to the defendant, and that the meaning and significance of these symbols on the labels should be established by the manager of the local State store and not by what he was supposed to have told these witnesses. The lower court overruled this objection and the defendant, by counsel, excepted.

Boatright denied that he had sold the bottle of wine to Barker. He said that on the night in question, Barker, in a drunken condition, came to the door of his house and inquired of him "where George Lane lived;" that upon his reply that he "didn't know," Barker left. Boatright further testified that at the time of Barker's visit two neighbors, S. C. Slemp and James Vaughn, were there and saw all

that transpired between him and Barker.

Both Slemp and Vaughn corroborated Boatright's testimony. They said that they heard Barker, who was in a drunken condition, inquire of the whereabouts of some person and heard Boatright's reply. They testified that the conversation between Boatright and Barker took place in their plain view and that nothing was exchanged between Boatright and Barker.

Boatright further testified that the liquor found in his house at the time of the search had been legally acquired by him from the local State store. Moreover, he said that the bottle of wine which the officers had taken from Barker had not been purchased or owned by him (Boatright), nor had he delivered it to Barker. He admitted that he had purchased from the local State store on February 21, 1955, several bottles of wine, including those carrying serial numbers 4798, 4800, 4801, 4802, 4803 and 4804. He recalled having made two purchases on that day, that he made one purchase and deposited that in his car, and upon his return to make the second purchase, he found Barker in line making a purchase.

[■] The Commonwealth contends before us, as it did in the court below, that the fact that the serial number 4799 on the bottle of wine taken from Barker was between the two serial numbers, 4798 and 4800, found on the bottles in Boatright's house and admittedly purchased by him, showed that all of these bottles had been purchased at the same time by Boatright. It further contends that this evidence, coupled with the evidence that Barker went to Boatright's home for the purpose of buying wine, that shortly thereafter Barker was found to be in possession of a bottle of Roma wine, that the defendant, Boatright, had a quantity of liquor on hand including several bottles of Roma wine, warrants the finding that the defendant had sold the wine to Barker.

It is apparent that evidence of the meaning and significance of the symbols on the sales labels is a vital link in the Commonwealth's chain of circumstantial evidence against the defendant. Without such evidence the verdict cannot stand for there is no proof that the defendant had owned or possessed the bottle of wine taken from Barker. The Commonwealth undertook to establish this vital fact by improper evidence. As has been said, over the objection of counsel for the defendant, both of the Commonwealth's witnesses were permitted to testify that they had acquired the information as to the meaning and significance of the symbols from what the manager of the local

State store had told them. Such evidence was clearly hearsay and inadmissible. Its admission was prejudicial to the defendant and constituted reversible error.

■ Complaint is made of the trial court's refusal to grant Instruction D-1 which reads: "The court instructs the jury that under the warrant charging the defendant with the sale of alcoholic beverages the Commonwealth must prove beyond a reasonable doubt every element of the sale of which the defendant is accused, including the parties to the sale, the consideration and the changing hands of the article sold. If the jury should have a reasonable doubt as to the proof of any of the elements of the sale, they should return a verdict of not guilty."

In that form the instruction was objectionable and confusing. There was no dispute as to the "parties to the sale," or the "consideration" therefor, or as to "the changing hands of the article sold," if any sale took place.

The defendant was entitled to an instruction which told the jury that the burden was on the Commonwealth to prove beyond a reasonable doubt that the defendant had sold the wine to Barker, as alleged in the warrant. A jury of ordinary intelligence could determine from the evidence here whether such a sale had been made without being confused by the legal elements of the transaction.

For these reasons the judgment is reversed, the verdict set aside, and the case remanded for a new trial in conformity with the views here expressed.

*Reversed and remanded.*