# Richmond

## Jack Monroe Christian v. Commonwealth of Virginia.

November 28, 1960.

Record No. 5198.

Present, All the Justices.

The opinion states the case.

*David G. Simpson (Scully and Woltz,* on brief), for the plaintiff in error.

*Reno S. Harp, III, Assistant Attorney General (A. S. Harrison, Jr., Attorney General,* on brief), for the Commonwealth.

SNEAD, J., delivered the opinion of the court.

On December 17, 1959, Jack Monroe Christian, who pleaded not quilty to an indictment which charged him with murdering John D. Cox, Jr., was convicted of murder in the first degree. The jury fixed his punishment at confinement in the penitentiary for a term of thirty years. The trial court overruled defendant's motion to set the verdict aside and entered judgment on the verdict. Defendant admitted killing Cox and his sole defense was that he was insane at the time the act was committed.

Defendant alleged in his assignments of error that the court erred in refusing to set the verdict aside as contrary to the law and the evidence, because the evidence conclusively showed that he was insane. His other assignments of error were abandoned during argument at the bar of this court.

On July 7, 1959, the court granted defendant's motion, by counsel, requesting that he be examined by a psychiatrist of his own choosing at the Northwestern Psychiatric Clinic, in Winchester. Dr. Basil E. Roebuck examined him and suggested that he be committed for prolonged observation. Subsequently, on motion of defendant's counsel, the court committed defendant to Central State Hospital, in Petersburg, for observation. The superintendent of the hospital was directed to cause an investigation and report to be made on the then mental condition of defendant as well as his mental condition on June 14, 1959, the date on which the offense charged against him occurred. His report, dated November 5, 1959, follows:

"After evaluation by our staff, it is our opinion that under a strict interpretation of the M'Naghten rule the patient is now responsible and probably was responsible at the time of the offense. However, this patient is suffering from a mental illness of long standing, and this illness was a predisposing factor in the commission of the crime. We are also of the opinion that this patient needs to be institutionalized as his mental condition renders it impossible to predict whether he will act in an assaultive manner again in the future. At the present time, this patient is able to cooperate with his counsel in his own defense,

and therefore, he should be returned to court for disposition of his case."

There was no material conflict in the evidence relating to the events which culminated in the killing of Cox. On June 14, 1959, defendant left his place of employment about one o'clock, p. m., went home and changed his clothes. He then proceeded to Steve's Restaurant on Kent street in Winchester. As he left the restaurant, he observed Monty Ash and Cox standing on the porch of a nearby poolroom engaged in a conversation. Defendant walked around the corner and entered Ritter's Variety Store, where he purchased a pair of shoe-strings and a beer. When he departed from the store, Ash and Cox approached him, and Cox demanded that defendant pay him thirty cents which he claimed defendant owed him. Defendant informed Cox that he did not have the money, and Cox replied he was going to get the money one way or another. Defendant then went to his home on Freemont street and drank some beer.

Later in the day he returned to Steve's Restaurant and drank beer and whiskey which he "started feeling". On his way back home, defendant encountered Cox, Ash, Julius Newsome and James H. Doleman, and another argument ensued between defendant and Cox. According to Newsome, Cox told defendant "he was going to blow his brains out" and put his hand in his back pocket. Whereupon defendant remarked: "You killed Nixon [Nathan] Carter; I ain't going to let you kill me." Defendant told Cox to wait until he came back. He ran across an open field to his home, secured a butcher knife, returned in about five minutes, "hollored" and stabbed Cox several times which resulted in his sudden death. There had been no prior trouble between defendant and Cox.

The record discloses that Cox had been convicted for killing Nathan Carter. It is silent as to whether the conviction was for murder or manslaughter, and what punishment he received.

The Commonwealth introduced evidence which tends to show that defendant was normal and rational soon after the slaying. Officer Hildebrand, who arrived at the scene with Officer Dunn shortly after the act was committed, testified that defendant walked up to him and admitted killing Cox. He led Hildebrand to a nearby wood-pile where he had thrown the knife. Upon arrival at the police station he was interrogated. There, according to Hildebrand, he was coherent and "was talking normal." He made a statement to police officers, which was reduced to writing, concerning the circumstances relating to the crime.

Defendant relies heavily upon three expert witnesses called by him who gave testimony as to his mental status. Mrs. Florence Farley, Chief Psychologist at Central State Hospital who supervised the study of defendant while there, described his illness as "schizophrenic reaction, chronic undifferentiated type". When asked to explain the diagnosis she said: "It is a form of mental disorder which is characterized by changes in thinking, changes in effect or in feeling, or emotion, and changes in one's, alterations in one's interpersonal relationships or understanding of reality." She stated that he had very strong aggressive impulses, and that he possessed some paranoid elements. In response to a lengthy hypothetical question, it was her opinion that the person described was suffering from some mental disease which affected his will power at the time the event occurred, and that it was "highly possible" his act was a result of an impulse which she seriously doubted he could have resisted. She was asked: "Now, then, from your observation, from your testimony in regard to your conclusions as to these reports, is a person of this type not accentuated into action by alcohol and drinking?" Her reply was: "That is possible." Mrs. Farley further stated that schizophrenic individuals are extremely unpredictable.

Dr. Wilbur Hamman, Psychiatrist in charge of criminal evaluation at Central State Hospital, diagnosed defendant's mental illness as "a rather severe form of ambulatory schizophrenia". He testified that defendant was definitely suffering from a mental disease affecting his will power at the time the act was committed; that he was "extremely mentally and emotionally disturbed and unable to control his behavior", and that in his opinion the act in question was one of impulse which he did not believe defendant could have resisted. He was asked if he had an opinion as to whether defendant was able to distinguish right from wrong and to know the nature and consequences of his act. He replied: "Well, this is a real hooker, whether he knew the consequences of his act at the time he committed the act. I don't know. Most probably he did. Certainly, immediately afterwards he was aware of the consequences of his act and certainly aware of the difference between right and wrong." Later he said: "If I felt that he did not know either the right from wrong, or the nature and quality of his act I would not have recommended that he return to court."

Dr. Basil E. Roebuck, the psychiatrist who first examined defendant and recommended that he be committed for observation, stated that there was a possibility defendant was acting under an irresistible

impulse at the time he killed Cox. He was asked if a schizophrenic individual is at large and not under treatment and is afraid of or aggravated by another person whether these circumstances would likely cause the schizophrenic individual to act violently toward that person. He replied: "Yes, I think it could." When asked whether he would be able to distinguish right from wrong, he said: "This is very difficult to answer. I think under the conditions you mention where you have a sick individual who performs an impulsive act like this, as a result of his sickness, I think one could honestly say, no."

Defendant contends that the evidence shows as a matter of law he was insane, because he was suffering from an irresistible impulse arising out of a diseased mind at the time he killed Cox. On the other hand the Commonwealth takes the position that the evidence presented a jury question.

We had occasion to discuss in some detail the doctrine of irresistible impulse in *Thompson* v. *Commonwealth*, 193 Va. 704, 717, 718, 70 S. E. 2d 284. There we said:

"In 14 Am. Jur., Criminal Law, sec. 35, p. 793, irresistible impulse is defined to be 'an impulse induced by, and growing out of some mental disease affecting the volitive, as distinguished from the perceptive, powers, so that the person afflicted, while able to understand the nature and consequences of the act charged against him and to perceive that it is wrong, is unable, because of such mental disease, to resist the impulse to do it. It is to be distinguished from mere passion or overwhelming emotion not growing out of, and connected with, a disease of the mind. Frenzy arising solely from the passion of anger and jealousy, regardless of how furious, is not insanity.'

\* \* \* \* \* \* \* \* \*

"Judge Staples, in *Dejarnette* v. *Commonwealth*, 75 Va. 867, 878, approved a similar definition, and said: 'Certainly no sound exception can be taken to this definition of homicidal mania or irresistible impulse, as it is sometimes termed; a diseased state of the mind, the tendency of which is to break out in a sudden paroxysm of violence, venting itself in homicide or other dangerous and violent acts upon friend and foe indiscriminately.'

\* \* \* \* \* \* \* \* \*

"\* \* \* The irresistible impulse doctrine is applicable only to that class of cases where the accused is able to understand the nature and consequences of his act and knows it is wrong, but his mind has be-

come so impaired by disease that he is totally deprived of the mental power to control or restrain his act."

There is a presumption of law that every person charged with a crime was sane and responsible when the act was committed. Weihofen, Mental Disorder as a Criminal Defense, p. 214; *Holober* v. *Commonwealth*, 191 Va. 826, 836, 62 S. E. 2d 816; *Lucas* v. *Commonwealth*, 201 Va. 599, 607, 112 S. E. 2d 915. With regard to this presumption there is a conflict of authority as to the degree of proof required of the defendant. The three major theories are: (1) the defendant must establish his insanity beyond a reasonable doubt; (2) the defendant must establish his insanity by a preponderance of the evidence, or to the satisfaction of the jury; and (3) the defendant is required only to raise a reasonable doubt as to his sanity. 1 Wharton's Criminal Evidence, § 28, p. 85.

In *Boswell's Case*, 20 Gratt. (61 Va.) 860, 868 a jury instruction was approved which embodied the rule: "That every man is presumed to be sane, and to possess a sufficient degree of reason to be responsible for his crimes, until the contrary is proved to their satisfaction; * * *."

Later in *Dejarnette* v. *Commonwealth*, 75 Va. 867, 881, it was held that where the defense of insanity is interposed, the defendant must prove insanity to the satisfaction of the jury. The court observed: "Insanity is easily feigned and hard to be disproved, and public safety requires that it should not be established by less than satisfactory evidence."

In the recent case of *Holober* v. *Commonwealth, supra,* at p. 836, we observed:

"It is firmly established in the jurisprudence of this State that: 'When the *corpus delicti* has been established and proof adduced that the accused committed the act, it is not sufficient for the accused to raise a reasonable doubt as to his sanity; he must go one step further and prove to the satisfaction of the jury that he was insane at the time of the commission of the act.' *Wessells* v. *Commonwealth,* 164 Va. 664, 673, 180 S. E. 419." See also *Maxwell* v. *Commonwealth,* 165 Va. 860, 865, 183 S. E. 452; *Jones* v. *Commonwealth,* 202 Va. 236, 117 S. E. 2d 67, this day decided.

Defendant recognizes the rule in this Commonwealth which requires the accused to prove his insanity to the satisfaction of the jury, but he argues that the rule which requires only that the accused raise a reasonable doubt as to his sanity is more logical. Under it the accused need only offer enough initial evidence of insanity to meet the burden of adducing evidence to overcome the presumption of sanity.

When this has been done, then the State must prove sanity beyond a reasonable doubt. Defendant maintains that this rule is consistent with the presumption of sanity and the principle that the guilt of the accused must be established beyond a reasonable doubt. We are urged by defendant to adopt it and test the sufficiency of the evidence by it to support the verdict. This we decline to do. The existing doctrine is firmly established in the jurisprudence of this Commonwealth. It is a sound rule of law which has stood the test of time, and we adhere to it.

■ We cannot say that defendant was insane as a matter of law. It was a question for the jury to decide after consideration of all the evidence adduced and under the court's instructions. Our conclusion is that the evidence was sufficient to support the verdict and the trial court did not err in refusing to set it aside.

■ During oral argument counsel for defendant moved this court to remand the case to the court below for the purpose of entering orders for the payment of certain costs as provided by § 17-30.1, 1960 Cum. Supp., Code 1950. The motion is granted and the case is remanded so that the trial court may now entertain a motion for the entry of such orders.

The judgment appealed from is

*Affirmed and remanded.*