# Richmond

## Edgie R. Jones v. Commonwealth of Virginia.

November 28, 1960.

Record No. 5149.

Present, All the Justices.

The opinion states the case.

*William King Mapp* (*Mapp and Mapp*, on brief), for the plaintiff in error.

*Reno S. Harp, III, Assistant Attorney General* (*A. S. Harrison, Jr., Attorney General*, on brief), for the Commonwealth.

WHITTLE, J., delivered the opinion of the court.

██ This case is before us upon a writ of error to a judgment of the Circuit Court of Accomack County wherein Edgie R. Jones was sentenced to serve five years in the penitentiary in conformity with the verdict of a jury finding him guilty of involuntary manslaughter in the slaying of his wife, Martha Jones.

It is disclosed that on the morning of May 18, 1959, Jones purchased a six shot .22-caliber pistol. On the evening of that day David Bennett, a long-time friend of Jones', visited the latter's store. Jones invited Bennett, whose wife was visiting in Norfolk at the time, to spend the night with him. Bennett accepted the invitation and went home with Jones and his wife, where he ate supper.

After supper they watched television until about 9:00 p.m. when they retired for the night. Jones and his wife went to their bedroom and Bennett went to sleep on the sofa in the living room. Later in the night Bennett was awakened by the screams of Mrs. Jones at which time he heard the firing of a pistol. He "jumped up", saw Jones holding his wife by her arm with his left hand and holding the pistol in his right hand. Mrs. Jones broke away from her husband and staggered out the door, at which time Jones pointed the pistol at Bennett and threatened to shoot him. Bennett ran out of the house and upon

returning later to get his clothes he saw Jones put the pistol to his head and pull the trigger.

Jones testified that it was his intention to commit suicide because of his poor financial condition; that he had gone into the darkened kitchen where he took the pistol from a drawer; that at this point his wife came into the room, grabbed his hand and a bullet was fired into a shelf. He testified that he did not remember shooting his wife.

Mrs. Jones was taken to a local hospital where it was discovered she had four bullet wounds in her body. Defendant was taken to a Norfolk hospital where he was treated for a bullet wound in his temple which subsequently resulted in the loss of an eye. Mrs. Jones died on June 27, 1959.

The record discloses that Jones and his wife were married on April 23, 1913, and from that date until the time of the shooting they lived together happily and apparently were a devoted couple.

The question raised by the first assignment of error is: Did the Commonwealth prove the *corpus delicti* beyond a reasonable doubt. The basis for the assignment is that Mrs. Jones was shot on May 18, 1959; that she did not die until June 27, 1959, and that the cause of her death was not traceable to the wounds inflicted by the bullets. The defendant thus contends that this component part of the *corpus delicti* was not established and that his motion to strike the evidence should have been sustained. There is no merit in this contention. Dr. Henderson, a witness on behalf of the Commonwealth, testified:

"Q. What was her [Martha Jones'] cause of death?

"A. The cause of her death was generalized peritonitis.

"Q. What did it come from?

"A. Well, peritonitis is an infection of the peritoneum or abdominal cavity. In this case, it was caused by bullet wounds which caused several perforations of the intestinal tract.

\*      \*      \*      \*      \*      \*      \*

"Q. What was the cause of the death that led up to the peritonitis?

"A. Well, certainly the bullet wounds are the things that started the whole train of events."

Although Dr. Henderson was vigorously cross-examined his evidence was in no way changed.

While there was other evidence tending to show that Mrs. Jones died as a result of the bullet wounds inflicted, the testimony of Dr. Henderson was sufficient to carry this question to the jury. The

evidence is overwhelming that the death of Mrs. Jones was caused by generalized peritonitis resulting from the bullet wounds inflicted by the defendant, and this issue was properly resolved by the jury's verdict. *Harrison* v. *Commonwealth*, 183 Va. 394, 401, 32 S. E. 2d 136, 140; *Hevener* v. *Commonwealth*, 189 Va. 802, 810, 54 S. E. 2d 893, 897.

■ The second assignment of error charges that the verdict was contrary to the law and the evidence and was without evidence to support it. In this connection the defendant states in his brief, "Upon the indictment for murder your petitioner pleaded 'not guilty', and the ground of his defense from the outset was insanity at the time the alleged shooting took place."

The contention of the defendant relates to evidence introduced on his behalf which had a tendency to show that he was insane before and at the time of the shooting. On the other hand, witnesses for the Commonwealth testified that they had observed nothing abnormal about the defendant prior to the shooting; that he had attended to his business affairs as usual, and had talked and acted in a rational manner. The defendant testified that his financial condition had disturbed him but he admitted that on the day of the shooting he "felt fine."

The family physician had, on March 19, 1959, or shortly thereafter, examined the defendant and recommended that he secure some psychiatric help, which he attempted to do. The doctor said he made this recommendation not because Jones seemed to be acting in an unusual manner but because he appeared to be "somewhat nervous."

Dr. Fred G. Woodson, a psychiatrist called on behalf of the defendant, testified that in his opinion the defendant on the day of the shooting (1) did not have the capacity to judge right from wrong, and (2) did not have control over his impulses. Dr. Woodson based his opinion on an examination of the defendant made some five days after the crime was committed. The defendant takes the position that this evidence was sufficient to show that he was insane at the time of the shooting and consequently the court should have set aside the verdict.

While there was strong evidence to indicate that Jones' mental condition was impaired, there was other evidence showing that it was not. This conflict in the evidence presented a jury question. It is well settled law in this Commonwealth that under the circumstances

related it was for the jury to determine whether or not the defendant was insane at the time of the commission of the crime. It is no sufficient for the defendant to raise a reasonable doubt as to his sanity; he must go a step further and prove to the satisfaction of the jury that he was insane at the time of the commission of the criminal act. *Wessells* v. *Commonwealth*, 164 Va. 664, 673, 180 S. E. 419; *Holober* v. *Commonwealth*, 191 Va. 826, 836, 837, 62 S. E. 2d 816, 821.

Every man is presumed to be sane and to possess a sufficient degree of reason to be responsible for his crimes until the contrary is proved to the satisfaction of the jury. *Boswell* v. *The Commonwealth*, 20 Gratt. (61 Va.) 860, 868; *Maxwell* v. *Commonwealth*, 165 Va. 860, 865, 183 S. E. 452; *Christian* v. *Commonwealth*, 202 Va. 311, 117 S. E. 2d 72, this day decided.

The third assignment of error deals wtih the trial court giving, over the objection of the defendant, Instruction No. 2, which reads:

"That in every case, although Edgie Jones may be laboring under partial insanity, if he still understands the nature and character of his act and its consequences, and has a knowledge that it is wrong and criminal, and a mental power sufficient to apply that knowledge to his own case, and to know that if he does the act he will do wrong and receive punishment, and possesses withal a will sufficient to restrain the impulse that may arise from a diseased mind, such partial insanity is not sufficient to exempt him, Edgie Jones, from responsibility to the law for his crimes."

While this instruction is not skillfully drawn it correctly states a principle of law approved in this jurisdiction. It is stated in 10 Mich. Jur., Criminal Responsibility, § 44, p. 167:

"Test of Insanity.—As a general rule, although the accused may be laboring under partial insanity, if he still understands the nature and character of his act, and its consequences, and has a knowledge that it is wrong and criminal, and a mental power sufficient to apply that knowledge to his own case, and to know that if he does the act he will do wrong and receive punishment, and possesses withal a will sufficient to restrain the impulse that may arise from a diseased mind, such partial insanity is not sufficient to exempt him from responsibility to the law for his crime." Citing *DeJarnette* v. *Commonwealth*, 75 Va. 867, 877, 878; *State* v. *Harrison*, 36 W. Va. 729, 15 S. E. 982, 18 L.R.A. 224; *State* v. *Maier*, 36 W. Va. 757, 15 S. E. 991.

The defendant argues that the use of the term "partial insanity" is "misleading and confusing". This would be true except for the fact that the body of the instruction plainly tells the jury that although the defendant may be laboring under partial insanity, if he still understands the nature and character of his act and its consequences, and has knowledge that it is wrong and criminal, and has mental power sufficient to apply that knowledge to his own case, and has knowledge sufficient to know that if he does the act he will do wrong and receive punishment, and possesses a will sufficient to restrain the impulse that may arise from a diseased mind, that such partial insanity is not sufficient to exempt him from responsibility to the law for his crime.[1]

We hold that in this instance the instruction as qualified was not prejudicial to the defendant.

Upon a retrial of the case the first four words "That in every case", should be omitted. They lend no meaning to the instruction and tend to confuse.

   ■ The fourth and last assignment of error is directed to the alleged admission of improper evidence. In this connection the defendant first complains that the court erred in permitting David Bennett to give opinion evidence as to the defendant's apparent mental condition. On direct examination Bennett testified:

"Q. He [Jones] didn't act like he was out of his mind?

"A. No.

"Mr. Mapp: If Your Honor please, I object. I think he can tell what he did or said, but Mr. Fears is asking for an opinion.

"The Court: He has a right to ask if he did anything unusual to indicate a lapse of memory.

"Mr. Mapp: I except to the court's ruling."

Here a lay witness was in effect permitted to express a professional opinion as to whether or not the defendant was "out of his mind". While this evidence in itself would not constitute reversible error it was improper. As said in *Ramsey* v. *Commonwealth*, 200 Va. 245, 249, 105 S. E. 2d 155, 158:

"* * * No principle of law is better settled than that the opinions of witnesses are, in general, inadmissible; that witnesses can testify to

[1] See 26 Am. Jur., Homicide, § 105, p. 228, for a treatment of the term "partial insanity" and its effect in determining the degree of crime of which the accused may be convicted. See also 22 C. J. S., Criminal Law, § 58, p. 121; and Anno: 76 Am. St. Rep. 83.

facts only, and not to opinions or conclusions based upon the facts."

Other improper evidence was admitted over the strenuous objection of counsel for defendant when Dorothy Bennett, the wife of David Bennett, was permitted to testify as to a statement made in her presence by the deceased on or about the 15th day of April, 1959, which was more than one month prior to the shooting. Mrs. Bennett was asked, "What was said by Mrs. Jones [the deceased] about Edgie [the defendant]?", to which she replied, "I heard her tell her son, Marvin, if you children don't do something and do it quick, he is going to kill me, he said he would do it, and he will do it, and she was crying."

It developed on cross-examination that this statement was not made in the presence of the accused. Manifestly the evidence was hearsay and inadmissible. Its admission was prejudicial and constitutes reversible error. *Mullins* v. *Commonwealth*, 113 Va. 787, 75 S. E. 193; *Boatright* v. *Commonwealth*, 198 Va. 753, 756, 757, 96 S. E. 2d 772, 775; *Belton* v. *Commonwealth*, 200 Va. 5, 7, 104 S. E. 2d 1, 3.

For the reasons indicated the judgment is reversed, the verdict set aside, and the case remanded for a new trial if the Commonwealth be so advised.

*Reversed and remanded.*