Joe **PAYNE**, Petitioner,

v.

Addison E. **SLAYTON**, Jr., Superintendent of the Virginia State Penitentiary, Respondent.

Civ. A. No. 71-C-30-D.

United States District Court,
W. D. Virginia,
Danville Division.

Aug. 2, 1971.

Vann H. Lefcoe, Asst. Atty. Gen., Richmond, Va., for respondent.

## OPINION and JUDGMENT

DALTON, District Judge.

This case comes before the court upon a petition for a writ of habeas corpus, filed *in forma pauperis*, pursuant to the provisions of 28 U.S.C. § 2241.

The petitioner is currently serving four consecutive two-year sentences pursuant to judgments entered by the Circuit Court of Halifax County, Virginia, on January 15, 1968 for four counts of breaking and entering.

At his trial, the petitioner was represented by court appointed counsel and entered a plea of not guilty. The petitioner waived his right to a jury trial and elected to be tried by the court. From his conviction he did not appeal.

Initially, the petitioner sought habeas corpus relief in the Circuit Court of Halifax County on May 4, 1968; however, his writ was denied and dismissed on November 22, 1968. From that judgment the petitioner sought no further review. Subsequently, on September 30, 1970 the petitioner filed another petition for a writ of habeas corpus in the same court, but that petition was summarily denied and dismissed on October 27, 1970. From that judgment the petitioner appealed to the Virginia Supreme Court of Appeals which affirmed the judgment of the lower court on April 27, 1971.

In the present federal habeas corpus proceeding, the petitioner's allegations center around his alleged insanity at the time of the trial and at the time the crimes were committed. Specifically, the petitioner alleges that the representation afforded him by his court appointed counsel was ineffective in that his attorney failed to substantiate the petitioner's mental background, and that he failed to subpoena hospital records and the doctors who conducted his examination. He further alleges that he was denied a fair and impartial psychiatric examination.

The petitioner at the time of the trial was about thirty years of age. His mother testified that he had been born in Campbell County, Virginia, but that he had lived with her in Halifax County for the last fifteen to twenty years. The record further reveals that the petitioner had little or no education and was illiterate, that he attended church regularly, and that he had worked as a farm and pulpwood laborer. Also the record shows that the petitioner had been

committed to the Children's Bureau for several offenses committed by him as a juvenile during May of 1951. In April of 1958, the petitioner was committed to Central State Hospital in Petersburg, Virginia following a conviction of breaking and entering. Apparently the petitioner remained in that institution for approximately six years. The petitioner alleges that he was committed on another occasion for approximately the same period of time; however, nothing in the record was found to substantiate this allegation.

The facts surrounding the convictions which the petitioner is now challenging reveal that between July 2nd and July 30th, 1967, the petitioner entered four different residences in the immediate area of his home. Three of the four houses were uninhabited at the time of the crimes, and the only items stolen were clothing and a jar of pennies. The petitioner was arrested on July 31, 1967 without a warrant when a storeowner reported that the petitioner had purchased several items with pennies. The petitioner was taken to the sheriff's office where the sheriff advised the petitioner of his constitutional rights. While the sheriff stated at the trial that he thought that the petitioner should be in a mental institution, he testified that he knew that the petitioner was of low mentality and therefore he had carefully explained to him his rights. The sheriff further stated that he believed that the petitioner had understood what he had told him. This testimony was substantiated by a tape recording of the conversation which took place between the sheriff and the petitioner. After this explanation of his rights, the petitioner confessed that he had entered the four dwellings.

While the record does not reveal the exact date on which the petitioner's counsel was appointed, it was within a week of his arrest. On August 9, 1967, the defendant appeared with his attorney before the court at which time on motion of the Commonwealth Attorney the court ordered that Dr. N. H. Wooding, a local physician, be appointed to examine the petitioner in order to determine his mental condition. On August 15, 1967, the petitioner again appeared with his attorney before the court, and the report of Dr. Wooding was given. Pursuant to that report, the court ordered that the petitioner should be confined in Central State Hospital in Petersburg for a proper examination of his mental condition, and it was further ordered that the superintendent of that institution should report in writing to the court as to the mental condition of the petitioner.

The record shows that on September 18, 1967, a letter signed by the assistant superintendent and the clinical director of Central State Hospital was sent to the trial judge, and a copy thereof was also sent to the petitioner's attorney. That letter contained the following report:

> After a period of careful observation and evaluation of this individual, and a review of his past history and behavior, including a previous admission to this hospital, it is the opinion of our Medical Staff that he is not mentally ill and should be returned immediately to the jurisdiction of your Court to stand trial on any charges which may be pending against him. Our Diagnostic examinations and studies reveal that he is functioning at a subnormal level of intelligence; however, it is felt that he knows right from wrong and should be held responsible for his behavior and acts. There have been no physical abnormalities noted during his period of observation.

In the case at bar, it is the duty of this court to determine whether or not the petitioner's mental condition was properly presented to the trial court in such a manner as to insure that the trial judge could make an adequate determination of the petitioner's sanity. As pointed out in the statement of facts above, the petitioner waived his right to trial by jury and elected to be tried by the court. While this court is aware that

an incompetent is incapable of waiving any of his constitutional rights, it is of the opinion that this waiver was knowingly and intelligently made by the petitioner. The record reveals that the judge was aware of the petitioner's low mentality and that he carefully explained the petitioner's right to jury trial to him when the petitioner made his election. Furthermore, at this point in the trial, the judge had sufficient evidence to support his holding that the petitioner was competent to stand trial. The judge of the trial court had received the report of the staff at Central State Hospital stating that the petitioner was competent to stand trial, and also the judge could make his own determination based on the responses which the petitioner made to him concerning his waiver of trial by jury, as to whether or not he comprehended what was happening. When sufficiency of the evidence supported a determination by a state trial judge is challenged in federal habeas corpus proceedings, the sole question in the federal court is whether or not that determination by the trial court rests upon any evidence at all. Williams v. Peyton, 414 F.2d 776, 777 (4th Cir. 1969); Skipper v. Cox, 320 F.Supp. 934, 935, 936 (W.D. Va.1970). This court finds that the evidence was sufficient to support the judge's determination that the petitioner was competent in regard to his waiver of jury trial.

■ Under the law of Virginia, an accused is presumed to be sane at the trial unless his mental condition is called into question by proof to the contrary. Thomas v. Cunningham, 313 F.2d 934 (4th Cir. 1963). Furthermore, the Supreme Court of the United States has stated that a defendant's efforts to overcome the presumption of sanity may be circumscribed by state prescriptions as to the quantum of proof and legal tests of sanity. Leland v. Oregon, 343 U.S. 790, 72 S.Ct. 1002, 96 L.Ed. 1302 (1952). The State of Virginia has enacted statutory provisions which expressly authorize a hearing on the question of whether the person to be tried is in such a mental

condition that his confinement in a hospital for the insane, or colony for the feebleminded, for proper care and observation is necessary to attain the ends of justice. Virginia Code Annotated 19.1–228. The result of this legislation is the assurance by the Commonwealth that one whose mental capacity to cope with the exigencies of a trial is in doubt shall not be put in jeopardy without a preliminary inquiry into his present mental condition. Thomas v. Cunningham, supra, 313 F.2d at 939. This procedure meets the constitutional standard set forth in the case of Pate v. Robinson, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966), in which the court held that when the evidence raises a sufficient doubt as to the defendant's competence to stand trial, the due process clause of the Fourteenth Amendment requires that the defendant be afforded a hearing on that issue.

In the case at bar there is no doubt that the mental condition of the petitioner was in question. While it is not precisely clear who instituted the issue initially, the record shows that the petitioner and his attorney were present on August 9, 1967, when the court ordered the examination by Dr. Wooding to determine the petitioner's mental capacity. Furthermore, on August 15, 1967, the petitioner and his attorney appeared again before the court, and while the content of Dr. Wooding's report is not in the record, it must have contained the expression of some doubt of the petitioner's competence, because the court thereafter ordered the petitioner committed to Central State Hospital for observation. Pursuant to the petitioner's commitment order, the staff at that institution observed and evaluated the petitioner and rendered an opinion that the petitioner was competent. In light of the above-mentioned facts, it appears to this court that the petitioner's constitutional rights surrounding the competency issue were met.

■■ Under the law of Virginia, if an accused relies on the defense of insanity, the burden is on him to prove to

the satisfaction of the trier of fact that he was insane at the time of the criminal act. Reasonable doubt as to his insanity is not enough to excuse him. Thompson v. Commonwealth, 193 Va. 704, 711, 70 S.E.2d 284, 288 (1952); Christian v. Commonwealth, 202 Va. 311, 117 S.E.2d 72 (1960). The duty of carrying this burden falls upon the petitioner's attorney to present the issue to the court when he has reasonable belief that his client's mental condition is of a nature which may render him incompetent to stand trial and which may also raise a question of his client's sanity at the time of the crime. It is the opinion of this court that the petitioner's right to effective assistance of counsel was not violated in this case, and that the petitioner's allegation of such denial is without merit. Here the attorney had been present at all hearings at which the petitioner's sanity was involved. During the trial the attorney questioned witnesses concerning the fact that the petitioner had been in a mental institution on a prior occasion. Also at the trial the attorney questioned the deputy sheriff who arrested the petitioner the day after the last breaking and entering offense occurred, and the sheriff who interrogated the petitioner on the same day. Both testified that the petitioner was of low mentality but that he appeared to be aware of what was happening to him.

It appears to this court that the attorney in the case at bar had made the trial court cognizant of his client's mental condition and background, and while he did not call any expert witnesses for the defense at the trial, the trial judge had sufficient evidence on which to base his decision that the petitioner was both sane at the time of the commission of the crimes and at the trial. Specifically, the testimony of the officers who observed and talked with the petitioner the day after the last offense occurred was relevant to this determination. Also of significance to this court is the fact that the examintion by the staff of Central State Hospital was conducted within such a short time after the last criminal act.

And finally the ability of the trial judge to observe and question the petitioner on the day of his trial was likewise significant to this court.

 The petitioner's claim that he was denied a fair and impartial psychiatric examination is without merit in that it is not supported by any evidence whatsoever.

For the reasons given above the petition for a writ of habeas corpus is denied and dismissed. If the petitioner desires to appeal this judgment or any part thereof, he should file with the clerk of *this* court within thirty (30) days a notice of appeal. Failure to file said notice of appeal may result in a denial of the right to appeal. The notice of appeal shall state the following:

1. the judgment, order, or part thereof appealed from;
2. the party or parties taking the appeal; and
3. the court (United States Court of Appeals for the Fourth Circuit) to which the appeal is taken.