## CIRCUIT COURT OF THE CITY OF PETERSBURG

Estate of Dale Edward Eavey,
deceased

v.

J. Jagan Reddy
and Associates et al.

### January 22, 1992

BY JUDGE OLIVER A. POLLARD, JR.

The Court has under consideration defendant's Special Plea in Bar. Following a hearing on November 5, 1991, at 5:00 p.m., counsel were invited to submit memoranda in support of their respective positions.

As stated by defendants in their joint memorandum, filed on November 25, 1991, a Special Plea in Bar permits a defendant to present evidence in support of a defense to a plaintiff's entire case without having to try all of the issues that would otherwise be involved in the case. Plaintiff in its Memorandum in Opposition to the Special Plea in Bar complains that it had no indication the November 5th hearing was to be an evidentiary hearing and that discovery rules and the right to a jury determination of fact and the weight of the evidence were thereby circumvented. The plaintiff, however, presented three witnesses at the hearing, including a medical expert and did not make a request that the issues considered at the hearing be submitted to a jury. The Court is of the opinion that plaintiff, therefore, acquiesced in the manner in which the hearing was conducted and the procedures employed at the hearing on November 5, 1991.

It was alleged by plaintiff in the Motion for Judgment and admitted by defendants in their responses that the decedent, Dale Edward Eavey, became involved with Dr. Agarwal and Dr. Reddy during the

latter part of April and early May of 1989 following an attempt by Mr. Eavey to hang himself. Following a brief stay in the hospital, a commitment hearing was held at which Dr. Agarwal testified that Mr. Eavey was no longer a threat to himself. Mr. Eavey was, thereafter, discharged by the judge who conducted the commitment hearing. On October 28, 1989, Mr. Eavey committed "suicide by self-inflicted lose contact gunshot wound . . . ."

The thrust of the Special Plea in Bar is that Mr. Eavey's act of self-destruction was wrongful, illegal, and immoral and is a bar to the plaintiff's claim. The authorities cited by the defendants support their argument that the act of suicide is wrongful, illegal, and immoral. *Plunkett v. Supreme Conclave*, 105 Va. 643 (1906). And, further, that a person who commits suicide cannot recover damages resulting from that act. *Hill v. Nicodemus*, 755 F. Supp. 692 (W.D. Va. 1991). Plaintiff takes the position that the act of suicide is no longer illegal or criminal in Virginia. The reasoning being that there is no Virginia statute stating that suicide is a crime or providing punishment for the act of suicide and because the Virginia statute, § 55–4, has done away with the common law rule that the estate of a person who commits suicide is forfeited to the State. This Court agrees, however, with the *Hill* Court's finding that Virginia rescinded the punishment for suicide without decriminalizing the act itself. The same conclusion was reached by the Circuit Court of Prince William County in *Wackwitz v. Roy*, 24 Va. Cir. 57 (1991), also cited in the defendants' memorandum. The *Wackwitz* opinion referred to *Hill v. Nicodemus* and stated that it found persuasive the holding that the "plaintiff's participation in an immoral or unlawful act precluded recovery of the injuries incurred as a result of that, and consequently, a decedent's participation in such act bars recovery of death by [his] personal representative." The *Wackwitz* court went on to state that "suicide is no longer punishable as a crime in Virginia; but it is still considered an immoral act. The United States Court has concluded that 'the taking of one's own life' is 'subversive of sound morality'."

It has been suggested that the decedent was criminally insane at the time of his death and that his condition would absolve him of any criminal responsibility for his act of self-destruction. Persons are presumed to be sane or competent and to possess a sufficient degree of reason to be responsible for their own actions until the contrary is

proven. This applies to both civil and criminal matters. *Nelms v. Nelms*, 236 Va. 281 (1988), *Fines v. Kendrick*, 219 Va. 1084 (1979), and *Jones v. Commonwealth*, 202 Va. 236 (1960). Defendants argue that plaintiff must prove that Mr. Eavey was incompetent or *non compos mentis* and his act, therefore, not a suicide or that he was criminally insane and, therefore, not legally responsible for his act of suicide. The test of competency being whether the decedent appreciated or understood the consequences of his own actions and the test for criminal insanity being whether he had the capacity to understand right from wrong at the time of the act in question.

Testimony at the November 5, 1991, hearing established that Mr. Eavey and his wife had separated prior to his death; however, the two stayed in touch and, on the morning of his death, had discussed plans for the following evening. At that time, Mr. Eavey was working regularly and playing softball and golf during his leisure hours. His wife testified that she ran across decedent, and when she refused to speak with him about their separation, he then became very angry and upset. A high speed vehicle chase ensued ending at the home of a friend, Dwight Reagan. Mr. Eavey told Reagan that "one of the two of us must go." He then grabbed his wife's car keys and threw them on the ground, obtained a shotgun from his automobile, and after pointing the gun momentarily at her, turned the gun on himself and killed himself.

Plaintiff's expert, Dr. Goldman, was qualified to testify on the issue of criminal insanity; however, he did not say or provide an opinion as to whether Mr. Eavey could tell the difference between right and wrong or whether he felt he was criminally insane at the time of the death. He did venture to say that Mr. Eavey was not capable of thinking about the nature and consequence of his actions, but that he did agree that Mr. Eavey knew that if he put the gun to his head and pulled the trigger that he would harm himself. Dr. Silverman, a defense witness, was qualified to testify on the question of Mr. Eavey's competency. He stated, after reciting some of the more salient facts provided by the testimony of the witnesses who preceded him, that he had every reason to believe that Mr. Eavey understood the consequences of his self-directed violence. His opinion was that Mr. Eavey was competent.

Although the Court is not entirely certain as to whether the appropriate standard or test to be applied in this case should be the test for

criminal insanity, the test for civil competency, or whether they should both be considered, it is not necessary to wrestle with this problem to a conclusion. It is clear that the plaintiff's evidence did not establish either that Mr. Eavey was criminally insane or that he was incompetent. On the other hand, the defense evidence established that Mr. Eavey was, in fact, competent. The plaintiff has not rebutted the presumption that the decedent was sane and competent.

We have, then, a suicide, a wrongful, illegal, and immoral act which bars any claim for damages as a result of such act. Plaintiff seeks to avoid the legal implications of the suicide by claiming that the present action is not a wrongful death action but a "negligence action" based on a claim of negligent patient care and that the suicide and death of Mr. Eavey is but a part of the damages incidental to the cause of action.

The wrongful death statute in Virginia substitutes the right of action for any action the decedent had at the time of his death, the object of the statute being to compensate the beneficiaries for their loss occasioned by decedent's death. The damages that are recoverable in a wrongful death action encompass the damages sought in this case. The present action brought in the name of the "Estate of Dale Edward Eavey, Deceased" is a wrongful death action.

The Court finds that the "Estate of Dale Eavey" is barred from recovering damages from the defendants, for the reasons stated, and the plaintiff's case will be dismissed.