# Richmond.

## HOUSTON v. COMMONWEALTH.

### December 16th, 1890.

1. CRIMINAL PROCEEDINGS—*Robbery—Definition— Va. statute.*—The common law offense of robbery is "the felonious and forcible taking from the person of another of goods or money to any value, by violence or putting in fear." The Va. statute does not define the offense, but only regulates its punishment.

2. IDEM—*Indictment.*—Indictment alleging the felonious and forcible taking by the accused from the person of another, of goods and money of a named value, by violence and putting him in fear, and that such goods and money were the property of such other person, is a sufficient charge of robbery at common law.

3. IDEM—*Clerk's charge to jury.*—Where indictment charges accused with robbery by presenting of fire-arms, it is proper to charge the jury that if they find him guilty as alleged in the indictment, they should fix his punishment according to the provisions of the first clause of sec. 3674, Code 1887.

4. IDEM—*Instruction—Assumption of facts.*—Instruction that if jury believe that defendant was present, aiding and abetting C. in robbing M., then he is guilty as principal in the second degree, though he neither beat nor struck M., nor presented fire-arms "at him, nor received any portion of the goods carried away by C., as the fruits of the robbery," assumes that there was a robbery, and that C. committed it and carried off the stolen property, and was improper.

Error to a judgment of circuit court of Pulaski county, rendered on the 11th day of December, 1889, affirming the judgment of the county court of said county rendered August 8th, 1889, upon an indictment jointly against Barney Cleaver and Henry Houston for the robbery of one Wm. Meyers.

The indictment, stripped of its verbiage, is: "That Barney Cleaver and Henry Houston in said county, &c., feloniously made an assault upon one Wm. Meyers, and feloniously put him in bodily fear by presenting fire-arms, which they then and there had and held, at him, and by feloniously striking and beating him, and one silver coin, current in the Commonwealth, of the denomination of one dollar and of the value of one dollar, and other silver coins, current in the Commonwealth, of denominations unknown to the grand jurors, amounting in value to the sum of one dollar; three quarts of whiskey of the value of two dollars, and one pistol of the value of two dollars, of the goods and chattels, coin and property of the said William Meyers, from the person and against the will of the said William Meyers, then and there, to-wit: on the day and year aforesaid, feloniously and violently, did steal, take and carry away, against the peace and dignity of the Commonwealth of Virginia."

It may be mentioned that it appears from the record, by endorsement on the indictment in this case, that Barney Cleaver was tried, and by the jury was found guilty as charged in the said indictment, and his term of imprisonment in the State penitentiary was fixed at five years.

At the trial of Henry Houston the county court overruled his demurrer to the indictment. Thereupon came a jury, which was charged in the presence of the court, by the clerk thereof, who, after reading the indictment to them, said: " And upon this indictment the prisoner has been arraigned, and has plead not guilty, and puts himself upon the country, which country you are. It is therefore your duty to enquire if he be guilty of the felony as charged, or not guilty; if you find him guilty of the felony as charged in the indictment, you shall ascertain his punishment by death, or in the discretion of the jury, that he be confined in the penitentiary for a term not less than eight years nor more than eighteen years; then if you find him not guilty of the felony charged in the indict-

ment, you will enquire if he be guilty of an assault and battery, and if you find him guilty of an assault and battery, you should ascertain his punishment so that the same be by fine not less than five dollars, but if you should find him not guilty of either of the aforesaid charges, you will say so and no more, and hearken to his cause."

To this charge the prisoner excepted, and the court certified the exception. At the trial, the Commonwealth asked the court to give to the jury the following instruction, to-wit: " If the jury believe from the evidence, beyond a reasonable doubt, that the prisoner, Henry Houston, was present, aiding and abetting Barney Cleaver in robbing the prosecutor, William Meyers, as charged in the indictment, then he is guilty as principal in the second degree, although the jury may further believe that the prisoner neither beat or struck said William Meyers, or presented fire-arms at him, nor that the prisoner after the robbing removed any portion of the goods or articles carried away by said Barney Cleaver, as the fruits of said robbing"; to which the prisoner objected, but the court overruled the objection, and the prisoner excepted.

After the jury had heard all the evidence, had received said instruction, and had heard the arguments of counsel, and had retired to their room to consider of their verdict, they returned into court and propounded to the court the following question: " Can we find the prisoner guilty, and assess his punishment at less than eight years in the State penitentiary?" To which the court replied by reading to the jury § 3674, of the Code of 1887, from the beginning to the words " eighteen years," and in the same connection remarked to the jury that if they found him not guilty of the felony and they thought him guilty of an assault and battery, they could punish him by a fine not less than five dollars; to which action of the court the prisoner did not except at the time, but afterwards did except, and the court certified the exception.

The jury by their verdict found the prisoner guilty as charged

in the indictment, and ascertained his imprisonment at eight
years in the penitentiary of Virginia.

Thereupon the prisoner moved in arrest of judgment on
the ground that one H. S. Dudley, who was a member of the
*venire facias*, and a member of the jury which tried him, was
also a member of the grand jury that found the indictment
against him; and the prisoner presented the records establish-
ing these facts. And on its part the Commonwealth presented
the affidavit of said H. S. Dudley, to which the prisoner ob-
jected, to the effect that when sworn upon his *voir dire* and as
a juror to try the prisoner, he had no recollection of having
been one of the grand jury that found the indictment, nor of
the evidence before the grand jury in relation to the robbery,
but that since the trial he does recall the fact that he was a
member of the grand jury, but did not remember the evidence
before that body. But the court overruled the prisoner's mo-
tion in arrest of judgment, to which action of the court the
prisoner excepted, and this exception was also certified by the
court. And the county court having entered judgment ac-
cording to the finding of the jury, the prisoner obtained a writ.
of error thereto from the judge of the said circuit court. And
the judge of the circuit court heard the case in vacation, and
affirmed the judgment of the county court; and thereupon
the prisoner obtained a writ of error from one of the judges
of this court.

*Wm. M. Perkins* and *T. L. Massie,* for the plaintiff in error.

*Attorney-General R. Taylor Scott,* for the Commonwealth.

RICHARDSON, J. (after stating the case) delivered the opinion
of the court.

Having examined the record with the care due to the im-
portance of the case, we proceed to examine the grounds re-

lied upon by the plaintiff in error for the reversal of the judg-
ment complained of.

The three first assignments of error—the refusal of the
county court to sustain the prisoner's demurrer to the indict-
ment, the charge of the clerk to the jury, and the response
made by the county court to the inquiry of the jury, should
be considered together. We are of opinion that the court did
not err in overruling the demurrer.

The indictment is for the common law offence of rob-
bery, which is defined to be "the felonious and forcible tak-
ing, from the person of another, of goods or money to any
value, by violence or putting him in fear." 4th Bl. Com., 242.

Our statute in respect to the offence of robbery, reads as fol-
lows: "If any person commit robbery, by partial strangula-
tion or suffocation, or by striking or beating, or by other vio-
lence to the person, or by the threat or presenting of fire-arms,
he shall be punished with death, or, in the discretion of the
jury, by confinement in the penitentiary not less than eight, nor
more than eighteen years. If any person commit a robbery
in any other mode, or by any other means, he shall be con-
fined in the penitentiary not less than five, nor more than ten
years." The indictment in the present case was found under the
first clause of this section; and we have, therefore, nothing to
do with the second clause.

The objection to the indictment, stated generally, seems
to be, that it does not charge the offence of "statutory rob-
bery." This is true, but it is true simply because there is,
in Virginia, no such thing as "statutory robbery." The of-
fence of robbery was not created by the statute, but was at a
very early period, and still is, a common law offence, and was
adopted by us at the formation of our State government, with
the great body of the common law then adopted, and the
crime, with its common law definition, has remained un-
changed. The statute above quoted does no more, and was
intended to do no more, than to regulate the punishment of

the pre-existing, well-defined, common law offence. This is apparent from the initial words of the statute: "If any person commit robbery"—that is by any of the means expressed in the first clause, he shall be punished, &c.; the statute is in no way even pretending to define the offence of robbery, and for the obvious reason that the legislature intended to adopt the common law definition, and, along with it, the settled legal meaning of the words and phrases necessary to charge the offence.

Now, as the statute only uses the word "robbery," a word having a well defined common law meaning, we must look to the common law to ascertain the nature and limits of the offense of robbery; and in doing so, the rule is, that, if a statute employs a word or phrase which has already been used in the common law or in another statute, and has there acquired by construction an established meaning, it is to be understood in the meaning previously determined. Bish. on Stat. Crimes, § 363. In this connection it must be kept in view that a "robbery" under our statute differs in no respect from a robbery purely at the common law; hence, if the indictment, in the present case, is good as a common law indictment, it is good also under the statute.

There are, says Bishop, in our States, many statutes against robbery, but the effect of most of them is merely to re-assert the common law. Thus, in 1804, a statute in Massachusetts made punishable "any person who shall, by force and violence, or other assault and putting in fear, feloniously steal, rob and take away from the person of another, any money, goods," &c.; and this was held to be a mere re enactment of the common law. Consequently, an indictment was adjudged to be good, which omitted the words "putting in fear," because it would have been good at the common law. Bish. on Stat. Crimes, § 519, citing *Commonwealth* v. *Humphries*, 7 Mass., 242. The same author further says: "And in Ohio, where they have no common law crimes, but a statute provides, that, if any person

shall forcibly and by violence, or by putting in fear, take from the person of another any money or personal property, of any value whatever, with intent to rob or steal, every person so offending shall be deemed guilty of robbery, and upon conviction thereof, shall, &c.,—this is held to create a crime identical with robbery at the common law; citing *Turner* v. *The State*, 1 Ohio State, 422–425, in which Ramey, J., is quoted as saying: " On recurring to the common law definition of this crime, as laid down by Hale, Hawkins and Blackstone, works of acknowledged authority, we find the legislature have incorporated it almost literally into the statute.    What is the irresistible implication?    Plainly, that they were used in the legal sense, and with the settled construction placed upon them. Therefore, it was adjudged to be sufficient, in the proofs, to show that the taking was from the immediate presence and control of the individual robbed, though not from the actual contact of his person.    And the same was held on a Tennessee statute defining robbery to be the ' felonious taking, from the person of another, goods or money of any value, by violence, or putting in fear,' referring to *Crews* v. *The State*, 3 Cald., 350. In like manner, the robbery of the California statute is deemed to be the same as at the common law; it is as follows: ' Robbery is the felonious and violent taking of money, goods, or other valuable thing from the person of another by force or intimidation;' citing *People* v. *Shuler*, 28 Cal., 490–492. We have already seen, that, where a statute merely provides a punishment for ' robbery,' it means robbery as defined by the common law."    Bish. on Stat. Crimes, § 519.

Now, inasmuch as the first clause of our statute, under which the indictment in the present case was found, merely regulates the punishment without defining the crime of robbery, it is clear upon principle and authority, that any indictment, under this clause of our statute, drawn as at the common law will be sufficient.    The inquiry, then, is, does the indictment in this case come up to that standard?    Clearly,

we think, it does. In discussing robbery at the common law, and its affinities, Bishop, in his valuable work on Statutory Crimes, § 517, says: "Robbery, at the common law, has been defined elsewhere by the present author to be 'larceny committed by violence from the person or one put in fear.' This definition differs in the form of expression, though not in substance, from what has been given by preceding authors. There has been no one form of words uniformly used, but Lord Hale's language accords in the main with what has been more commonly employed, as follows: 'Robbery is the felonious and violent taking of any money or goods from the person of another, putting him in fear, be the value thereof above or under one shilling.' 1 Hale, P. C., 532. To constitute this offense, there must be, 1st, violence; but it need only be slight, for anything which calls out resistance is sufficient; or, what will answer in place of actual violence, there must be such demonstrations as put the person robbed in fear. The demonstrations or fear must be of a physical nature, with the single exception, that, if one parts with his goods through fear of a threatened charge of sodomy, the taking is robbery. There must, therefore, be, 2d, a larceny, embracing the same elements as a simple larceny; and, 3d, the taking must be from what is technically called the 'person;' the meaning of which expression is, not that it must necessarily be from the actual contact of the person, but it is sufficient if it is from the personal protection and presence. Robbery is a mere compound larceny, consisting of simple larceny and an assault, attended by one or more of the circumstances of aggravation expressed in the first clause of our act; the second clause thereof, with which we have no concern here, being with respect to robbery committed in any 'other mode,' or, by any 'other means,' and for which a different punishment is prescribed."

Such being the elements of the offence, it follows that the indictment should contain all the allegations essential in simple larceny, with the additional matter that makes the

larceny robbery. The common form by which to effect this is to say, that, at a time and place, the defendant "in and upon one B. feloniously did make an assault, and him the said B. in bodily fear did feloniously put, and one, &c. (setting out the things taken and their value as in simple larceny), of the moneys, goods and chattels of the said B. from the person and against the will of the said B., then and there feloniously and violently did steal, take, and carry away, against the peace and dignity of the Commonwealth of Virginia."

Such, in fact, is the form of an indictment for robbery under our statute, and is laid down in Mayo's Guide, a book of real value to the Virginia practitioner, but one not as often referred to and relied upon as it should be. And the indictment in the present case, though somewhat awkwardly drawn, is in practical accord with the established form, and substantially sets out the offence of robbery with legal accuracy.

It charges that Barney Cleaver and Henry Houston, on, &c., at, &c.. (they, the said Barney Cleaver and Henry Houston being then armed with fire-arms, to-wit, with pistols), on one William Meyers, feloniously did make an assault, and him, the said William Meyers, in bodily fear did feloniously put, by the feloniously presenting of the said fire-arms, which they, the said Barney Cleaver and Henry Houston, then and there had and held, at him, the said William Meyers, and by feloniously striking and beating him, the said William Meyers, and one silver coin, current in Commonwealth, of the denomination of one dollar and of the value of one dollar, and other silver coins, current in this Commonwealth, the denomination of which are to the grand jurors unknown, amounting in value to the sum of one dollar; three quarts of whisky of the value of two dollars, of the goods and chattels, coin and property of the said William Meyers, from the person and against the will of the said Willian Meyers, then and there, to-wit: on the day and year aforesaid, feloniously and vio-

lently, did steal, take and carry away, against the peace and dignity of the Commonwealth of Virginia.

Thus the offence, with all its essential elements, as defined at common law, is set forth with substantial accuracy, and, pursuing the clause of the statute under which the indictment is found, there is set forth, with sufficient certainty, the aggravated circumstances which attended the assault and larceny, and made the larceny robbery. It is therefore clear that the indictment is good under the statute, because it is good at common law. In other words, the indictment clearly charges the felonious and forcible taking, by the accused, from the person of William Meyers, of the money and goods to the value specified, by violence, and putting him, the said Meyers in fear ; and that the money and goods thus taken were the property of said Meyers. This is robbery at the common law, and as the indictment properly sets forth a common law larceny, together with the aggravating matter which makes it, under the statute, robbery, the indictment itself is necessarily good under the statute, which does not create or define, but simply modifies the punishment of the common law crime of robbery, by authorizing the jury, at their discretion, to substitute, for the prescribed punishment of death, imprisonment in the penitentiary for a term of not less then eight nor more than eighteen years.

This leads up to the question as to the correctness of the charge of the clerk to the jury. The objection to the charge seems to be that the jury were directed that, if they found the prisoner guilty of the felony as charged in the indictment, they should ascertain his punishment by death, or, in their discretion, by confinement in the penitentiary for a term of not less than eight nor more than eighteen years; whereas, it is instead, that, but for the charge thus erroneously given, it was competent for the jury to find the accused guilty of robbery under the second clause of the statute, which provides that the punishment shall be for a term of not less than five

nor more than ten years. This contention is not well founded. The first clause, under which the indictment was found, applies solely to the aggravated forms of robbery, committed by the means expressed in that clause, and is wholly disconnected with the second clause, which affixes a wholly different punishment to a robbery committed in any " other mode," or by any other means. Hence, under the first clause, the indictment being found thereunder, there could be no other punishment, in the event of the jury finding the accused guilty of the felony as charged, than by death, or, in the discretion of the jury, by confinement in the penitentiary for a term of not less than eight nor more than eighteen years. It is, therefore, clear that the charge of the clerk to the jury is without fault.

At the trial the Commonwealth asked the court to give to the jury the following instruction, to-wit: "If the jury believe from the evidence, beyond a reasonable doubt, that the prisoner, Henry Houston, was present, aiding and abetting Barney Cleaver in robbing the prosecutor, William Meyers, as charged in the indictment, then he is guilty as principal in the second degree, although the jury may further believe that the prisoner neither beat or struck said William Meyers, or presented firearms at him, nor that the prisoner after the robbing moved any portion of the goods or articles carried away by said Barney Cleaver, as 'the fruits of said robbery.'"

We are of opinion that the court erred in giving this instruction, because it assumes as facts matters which should have been left to the jury for their decision. For instance, it says to the jury that if from the evidence they believe that Henry Houston aided and abetted Barney Cleaver in robbing William Meyers, then he is guilty as principal in the second degree, although the jury may further believe that the prisoner, " after the robbery," received no portion of " the goods or articles carried away by Barney Cleaver," &c; thus assuming that the prosecutor, William Meyers, had been robbed, that Barney Cleaver committed the robbery and carried away

the fruits of the crime; which were matters to be enquired into by the jury. The instruction would have been unobjectionable if the jury had been told that, "if they believed from the evidence that Barney Cleaver robbed the prosecutor, William Meyers, as charged in the indictment, and that the prisoner, Henry Houston, was present, aiding and abetting him therein, then the prisoner is guilty as principal in the second degree," &c. See *Boswell's Case*, 20th Gratt., 860, which is in this respect precisely similar to the case at bar. We are, therefore, of opinion that in giving this instruction in the form in which it was given, the court committed error for which its judgment should be reversed.

In the view taken of the case, and as for the error already pointed out, the judgment of the county court must be reversed, we deem it unnecessary to consider the other assignments of error. It is sufficient to say that, for the error aforesaid, the judgment complained of is erroneous and must be reversed, and the cause remanded to the county court of Pulaski county for a new trial to be had in accordance with the views expressed in this opinion.

JUDGMENT REVERSED.