# Richmond

## VERA MAXWELL v. COMMONWEALTH.

January 16, 1936.

Present, All the Justices.

The opinion states the case.

*O. L. Shackleford* and *John C. Davis,* for the plaintiff in error.

*Abram P. Staples, Attorney-General, Edwin H. Gibson, Assistant Attorney-General,* and *Joseph L. Kelly, Jr., Special Assistant,* for the Commonwealth.

CAMPBELL, C. J., delivered the opinion of the court.

The accused has been convicted of robbery and sentenced to the penitentiary for five years, in accordance with the verdict.

There were two counts in the indictment upon which she was tried. The first count charged that on the 27th day of August, 1934, on and upon one Virginia D. Cole, the accused feloniously did make an assault, and by the threat and presenting of firearms, to-wit: a pistol, the said Virginia D. Cole was put in bodily fear, and seventy-two dollars of the goods and chattels of the Western Union Telegraph Company, Inc., were feloniously stolen and carried away by the defendant. The second count charged the felonious taking of the money by putting the

said Virginia D. Cole in fear, but did not charge the presentation of firearms.

Section 4405 of the Code (as amended by Acts 1928, chapter 156) provides:

"If any person commit robbery by partial strangulation, or suffocation, or by striking or beating, or by other violence to the person, or by the threat of presenting of firearms, or other deadly weapon or instrumentality whatsoever, he shall be punished with death, or by confinement in the penitentiary for life, or for any term not less than eight years. If any person commit a robbery in any other mode, or by any other means, he shall be confined in the penitentiary, not less than five years nor more than ten years."

The defendant was found guilty on the second count of the indictment.

It is assigned as error: (1) that the evidence is insufficient to support the verdict; (2) that the court erred in refusing to set aside the verdict on the ground that at the time of the offense the defendant was under the influence of intoxicating liquor to such an extent that she was incapable of forming the specific intent to commit robbery.

These are the pertinent facts shown by the Commonwealth: The defendant, a young white woman twenty-four years of age, a former employee of the Western Union Telegraph Company in Florida, on the 24th day of August, 1934, drove an automobile to the office of the company in Norfolk, at 1 o'clock in the afternoon. Upon her arrival she first entered the office by the rear door, a door used exclusively by the employees. In the rear of the office was W. E. Riverton, an employee. Defendant did not accost the employee but immediately turned and went out of the office, carrying in her hand "something white." She then entered the office by the front door. There were four employees in the front office, a bookkeeper, two delivery clerks and Mrs. Cole, the credit manager. The bookkeeper, Miss Jennie Jones, went to the desk where defendant was standing and offered to

wait upon her but she motioned to Mrs. Cole, who at the time was waiting on a customer, and said she was waiting for her. When Mrs. Cole approached the defendant she observed that defendant had something concealed in the handkerchief which she held in her hand, and without saying a word to Mrs. Cole, defendant pulled the handkerchief from a pistol, and as Mrs. Cole, thoroughly frightened, backed away from the front counter with the exclamation, "Ye Gods, looks like that girl is going to shoot me," defendant walked behind the counter and opened the cash drawer next to the cash machine, but finding it empty, she opened a second drawer, took seventy-two dollars therefrom, walked out of the office, entered her automobile and drove to her home on Freemason street where she was arrested a short time thereafter. When arrested she made contradictory statements in regard to the location of the pistol, first stating that she did not know where it was and then later stating it was in the car, where it was found by the officers. When asked where the money was, she pointed, after some hesitation, to the purse lying on the bed upon which she was seated beside her mother. On the way to the station the officers observed that defendant had been drinking but testified that when first arrested she seemed to be rational. When asked if any one else was involved in the robbery, she replied, "If it had been a thousand in it, I wouldn't tell you. I had a reason." All of the witnesses for the Commonwealth testified that before her incarceration in jail the defendant appeared quite normal except for a peculiar expression in her eyes.

The defense interposed by the defendant rested upon these facts: She was a person of previous good character; that at the time of the commission of the offense she lived in the home of her parents and assisted them in conducting a boarding house; that she had saved from her earnings the sum of three hundred and eighty dollars and fifty-five cents, which was on deposit in bank at the time of her arrest; that for some time previous to the alleged

robbery she had been the victim of nervous spells, though never treated for such ailment; that on the morning of the day in question she was feeling nervous and "around" a quarter to 6 o'clock she drank some "bootleg" whiskey; "around" 11:15 A. M. she drank a glass full of the "bootleg" whiskey; that the whiskey produced a numbness like it had dope in it; that a short time after taking the second drink defendant decided she needed more liquor; she thereupon went in her automobile to the A. B. C. store situated near the Western Union office and purchased a fifth of a gallon of liquor and drank "a whole lot of it."

Mrs. Griffin, matron at the Norfolk city jail, testified that when defendant was admitted to jail she was in a highly nervous condition and smelled of whiskey; that she placed her in a cell where she could not hurt herself; that she had a "very wild look in her eyes."

Dr. George T. Myers, a medical expert, testified that after a thorough examination of the defendant and a careful consideration of the evidence he was of opinion that notwithstanding the ability of the defendant to drive her car through the traffic of the city streets, her ability to walk, to recall immediate incidents before and after the alleged offense, she was at the time of her visit to the telegraph office in "an alcoholic trance, or automatism."

There is in Virginia no such crime as statutory robbery. While the statute, section 4405, prescribes the punishment according to the mode by which the robbery is effected, it does not undertake to define the constituent elements of the crime. Therefore, to constitute the crime of robbery in Virginia, all of the elements essential at common law must exist.

In *Houston* v. *Commonwealth,* 87 Va. 257, 12 S. E. 385, 387, robbery is thus defined:

"To constitute this offense, there must be, 1st, violence; but it need only be slight, for anything which calls out resistance is sufficient; or, what will answer in place of actual violence, there must be such demonstrations as to

put the person robbed in fear. The demonstrations or fear must be of a physical nature, with the single exception, that, if one parts with his goods through fear of a threatened charge of sodomy, the taking is robbery. There must, therefore, be, 2d, a larceny, embracing the same elements as a simple larceny; and, 3d, the taking must be from what is technically called the 'person'; the meaning of which expression is, not that it must necessarily be from the actual contact of the person, but it is sufficient if it is from the personal protection and presence."

When the case of the Commonwealth is tested by this rule, conceding that the defendant was sane, there can be no doubt that the action of the court in overruling the motion to set aside the verdict on the ground of the insufficiency of the evidence is without error.

Should the defense of temporary insanity produced by voluntary intoxication prevail in this case? The answer must be in the negative.

■ In *Wessells* v. *Commonwealth,* 164 Va. 664, 180 S. E. 419, 422, where the defense was insanity, this court reaffirmed the doctrine laid down in *Dejarnette* v. *Commonwealth,* 75 Va. 867, that the Commonwealth, having established the *corpus delicti,* and that the act was done by the accused, has made out her case and the burden then rests upon the accused to prove to the satisfaction of the jury that at the time of the commission of the act he was insane.

■ This burden rests upon the accused by reason of the presumption of law that every person of the age of discretion is of sound mind.

■ Though it is contended by counsel for defendant that there is no conflict in the evidence on the question of defendant's intoxication, we are unable to concur in that contention. The facts heretofore stated from the Commonwealth's viewpoint show that defendant was in possession of all of her normal faculties. This situation, therefore, presented a question for the determination of
■

the jury. In our opinion it is hard, if not impossible, to conceive a case where such a question becomes one of law.

In *Johnson* v. *Commonwealth*, 135 Va. 524, 527, 115 S. E. 673, 674, 30 A. L. R. 755, Judge Kelly, dealing with a similar situation, had this to say:

"The evidence was in conflict as to the extent to which the defendant was intoxicated. Some of the testimony for the Commonwealth tended to show that he was only very slightly under the influence of liquor—'drinking a little, but not drunk,' as one of the witnesses described his condition. Other witnesses, some for the Commonwealth and some for the defendant, said he appeared to be 'crazy drunk,' or 'wild and crazy.' Whether he was drunk, and if so, how drunk, was an inquiry exclusively within the province of the jury, and the only question for us to decide is whether they were properly instructed as to how his state of intoxication, if they believed he was in that state, would affect his guilt."

We are in thorough accord with that view. To hold that the courts should as a matter of law determine the mental status of an accused as of the time when the criminal act is committed, when insanity produced by voluntary intoxication is relied upon, would, in our opinion, be the pronouncement of a dangerous doctrine. The jury system has well served many generations and should not be impinged upon by the courts.

The position assumed by the defendant is a novel one. If, in her attempt to commit robbery, she had killed Mrs. Cole, her voluntary drunkenness could not be invoked as an excuse for her crime, and yet, because she committed a crime which may, like murder, be punishable with death, she invokes her self-inflicted incapacity to form a specific intent to wholly excuse her from suffering the penalty attached to her act. However, in view of our conclusion that the issue raised involved a conflict of evidence which was properly submitted to the jury, we are not here concerned with whether or not there is a degree

of voluntary intoxication which will render a person legally incapable of forming a specific intent to commit robbery.

There is no merit in the second assignment of error.

When this case was argued, it was brought to the attention of the court that the chief counsel in the court below had died since the writ of error was awarded. In the brief filed by the eminent counsel who now represents defendant in this court for the first time, an attack is made on the verdict. The grounds now relied on are not the basis of any assignment of error in the petition for a writ of error. Consideration of this assignment is opposed by the Attorney-General, for the reason that defendant has not complied with Rule XXII of this court, which requires a plaintiff in error to make every objection on which he relies for reversal the basis of objection in the court below.

Were the question raised of less importance, we would sustain the contention of the Attorney-General, based upon a non-compliance with Rule XXII, and on the further ground that is it in contravention of section 6346 of the Code.

In *Johnson's Case, supra,* a similar situation arose, and while of opinion that the assignment was not properly made, the court, in view of the importance of the question, decided to consider it. We will in this case pursue that course.

The attack made on the verdict is that the evidence shows that if defendant is guilty of any offense, she is guilty of robbery under the first count of the indictment, to-wit: robbery accomplished "by threat or presenting of firearms," for which offense the minimum punishment is eight years in the penitentiary; that, in view of the fact that the jury found the defendant guilty on the second count and fixed her punishment at five years in the penitentiary, there was an acquittal on the first count, and as there was no evidence to sustain the conviction under the second count, the verdict and judgment are void.

Section 4918 of the Code provides:

"If a person indicted of felony be by the jury acquitted of part and convicted of part of the offense charged, he shall be sentenced for such part as he is so convicted of, if the same be substantially charged in the indictment, whether it be felony or misdemeanor."

It is argued by counsel for defendant that section 4918 applies to cases of homicide, malicious wounding, etc., and is not applicable to a case of robbery. In our opinion the argument is more specious than sound, and if permitted to prevail, the defendant would go hence without punishment, although her guilt is firmly established by the evidence.

In our opinion the power of the jury to find an accused guilty of an offense embraced in the indictment, though of a lesser degree than is warranted by the evidence, is firmly established in Virginia.

In August, 1896, Elmer A. Weatherholtz, of Shenandoah county, was tried for the murder of his wife and found guilty of murder in the second degree. The evidence conclusively demonstrated that the accused was guilty of murder in the first degree "by lying in wait." Section 3662, Va. Code 1887. No motion was made by the defendant to set aside the verdict on the ground that it was contrary to the evidence, but the court, of its own motion, set aside the verdict and the accused was eventually discharged.

Though the case of *Downs* v. *Commonwealth,* 2 Va. Law R., page 870, which arose in 1892 in Loudoun county, was not referred to by the trial judge in his opinion in the *Weatherholtz Case,* it should have been conclusive of the question. Downs, a white man, was tried for rape upon a notorious Negro woman. His guilt was plain but the jury found him guilty of an attempt to commit rape. His counsel moved to set aside the verdict and asked for a discharge of the prisoner. The trial court, Honorable Richard H. Tebbs, though of opinion that the verdict was

illogical, yet, as it was not to the prejudice of the prisoner, overruled the motion. An appeal was taken to the circuit court but was refused by Judge Keith, the circuit judge. A writ of error to this court was then applied for and was refused, hence there was no opinion handed down.

In the case of *Burton & Conquest* v. *Commonwealth,* 108 Va. 892, 900, 62 S. E. 376, 379, the identical question was under review. In holding that the jury in its discretion may find an accused guilty of an offense less in degree than that shown by the evidence, Judge Keith said: "Our jurisprudence, in this and in other respects, may be amenable to criticism of schoolmen and logicians, but subjected to the test of actual experience it has appeared in practice to be well that the law, after framing definitions and formulating rules of conduct, should allow to courts and juries, in their application and enforcement, a certain latitude and discretion. And so it comes to pass that a man may be indicted for murder of the first degree by the various means embraced in the statute, the evidence adduced may tend to the proof of the offense named in the indictment and none other, and yet the jury, acting under this discretion with which they have been clothed by the law, may find the offender guilty of a less offense. And it is well in practice that it should be so, else, owing to the tenderness of juries and their reluctance to impose the highest penalty, many crimes would go wholly unpunished, and thus the rigor of the law would tend rather to the promotion than to the prevention of crime."

This rule was reaffirmed in *Tucker* v. *Commonwealth,* 159 Va. 1038, 1048, 167 S. E. 253, in an opinion of this court delivered by Mr. Justice Hudgins.

We are of opinion that the judgment should be affirmed.

*Affirmed.*