# Richmond

## Daniel Pettus v. C. C. Peyton, Superintendent of the Virginia State Penitentiary.

March 6, 1967.

Record No. 6319.

Present, All the Justices.

*Falcon Hodges* (*Hodges and Harris*, on brief), for the plaintiff in error.

*W. Luke Witt, Assistant Attorney General* (*Robert Y. Button, Attorney General; Reno S. Harp, III, Assistant Attorney General*, on brief), for the defendant in error.

EGGLESTON, C. J., delivered the opinion of the court.

At the December, 1957 term of the Circuit Court of Mecklenburg county two indictments were found against Daniel Pettus and four others. One indictment charged them with felonious escape. The other charged that they, "In and upon one W. F. Harris, feloniously did make an *assault,* and the said W. F. Harris, in bodily fear, feloniously did put, and one shotgun of the value of One Hundred ($100) Dollars, being the property of the Commonwealth of Virginia, in lawful possession and custody of the said W. F. Harris, from the person and against the will of the said W. F. Harris, then and there, on the day and year aforesaid, in the county aforesaid, feloniously and violently did steal, take and carry away, against the peace and dignity of the Commonwealth."

Jesse R. Overstreet, Jr., a local attorney, was appointed to represent Pettus on the charges preferred in the two indictments. On Overstreet's recommendation Pettus pleaded guilty to both indictments. Upon consideration of the plea and after hearing the evidence, the trial court entered an order sentencing Pettus to serve two years in the penitentiary on the escape indictment, and another order sentencing him to serve eight years on the other indictment. This latter order recites that the defendant "stands indicted of a felony, to wit: Larceny and Assault;" that upon being "duly arraigned and after being advised by his counsel [he] pleaded guilty to the indictment, which plea was tendered by the accused in person;" that "the court being of the opinion that the accused fully understood the nature and effect of his plea, proceeded to hear and determine the case

without the intervention of a jury provided by law, and having heard the evidence doth find the accused guilty of a felony (larceny and assault) as charged in the indictment, and ascertain his punishment to be confinement in the penitentiary of this Commonwealth for the term of eight (8) years."

On April 10, 1964, Pettus filed in the Supreme Court of Appeals a petition for a writ of habeas corpus attacking the judgment of conviction entered on the second indictment, on the grounds among others, that the indictment was void because it charged two offenses, "larceny and assault", in a single count; that the order finding him guilty of such charges was void, and that he was denied the effective assistance of counsel at the trial.

The respondent filed an answer to the petition and, pursuant to Code, § 8-598, as amended, we entered an order remanding the case to the Circuit Court of Mecklenburg county for an plenary hearing on the allegations set forth in the petition. Falcon Hodges, a member of the Mecklenburg county bar, was appointed to represent the petitioner in the habeas corpus proceeding. After hearing the evidence the court entered an order denying and dismissing the petition for a writ of habeas corpus. We granted the petitioner a writ of error to review the latter order.

While the petitioner made several assignments of error, he says in his brief that they involve the single underlying contention that at the criminal trial he was denied the effective assistance of counsel guaranteed to him under the State and Federal Constitutions. He argues that the assistance was ineffective because, he says, his court-appointed counsel failed to note and object to these fatal defects in the proceeding, that: (1) he was charged in a single count in the indictment with two separate offenses, robbery and larceny; (2) he was indicted and convicted of "larceny and assault" when there is no such offense; and (3) the evidence introduced at the trial was insufficient to convict him of armed robbery.

There is no conflict in the evidence. On November 15, 1957, Pettus, a convict, was assigned to work on a public road in Mecklenburg county. He and other prisoners were guarded by W. F. Harris who had a shotgun in his possession. In some manner not clearly shown, Pettus got possession of the gun from the guard, and he and his four companions disarmed the guard and escaped from custody. Shortly thereafter they were apprehended and later indicted.

Overstreet, who had been appointed to represent Pettus on the charges preferred in the two indictments, conferred with the Com-

monwealth's attorney with respect to what recommendation the latter would make to the court should Pettus plead guilty to the indictments. It was agreed between them that if Pettus would plead guilty the Commonwealth's attorney would recommend that he be sentenced to two years on the escape indictment and eight years on the robbery indictment, the terms to run consecutively.

Overstreet went to see Pettus at the camp where he was being confined and told him of the nature of the charges which had been made against him—that in one indictment he was charged with felonious escape and in the other "with armed robbery." He told him of his right to be tried by a jury or by the court. He further told Pettus of the agreement which he had with the Commonwealth's attorney with respect to the recommendation which the Commonwealth's attorney would make to the court for the punishment which he (Pettus) would receive should he plead guilty to the two indictments. Overstreet said that Pettus agreed to this arrangement.

Pettus testified that he knew from his talk with Overstreet that he (Pettus) "was charged with robbery;" that he understood the agreement between Overstreet and the Commonwealth's attorney, and that pursuant thereto he agreed to plead guilty to the two indictments. He said that it was his own "voluntary decision" to do so, because he knew what he had done and "wanted to go ahead and plead guilty." He further said that there were no witnesses to be called on his behalf at the trial and he so advised his counsel. Pettus was asked by the trial court, "Did the attorney fail to do anything you requested him to do or anything of that nature?" He replied, "No, sir, he did not."

The evidence further shows that the agreement between Overstreet and the Commonwealth's attorney as to the recommended punishment was approved by the court and carried out. A charge of larceny as a separate charge was nol prossed, and Pettus received a term of eight years under the robbery indictment, which was the minimum sentence then prescribed in the statute for robbery by violence or intimidation. Code of 1950, § 18-163.* He also received a sentence of two years for felonious escape. Code of 1950, §§ 53-291, 53-293.

In this State there is no statutory definition of robbery, although Code of 1950, § 18-163, in effect at the time of the alleged offense, fixes the punishment therefor. Hence, with us, the elements of robbery are the same as at common law. *Mason* v. *Commonwealth*,

---

* This penalty was reduced by Acts of 1960, ch. 358, p. 433, to five years. Code, § 18.1-91 [Repl. Vol. 1960].

200 Va. 253, 105 S. E. 2d 149. In that case we adopted the common-law definition of robbery as "the taking, with intent to steal, of the personal property of another, from his person or in his presence, against his will, by violence or intimidation." 200 Va. at 254, 105 S. E. 2d at 150. See also, *Pierce* v. *Commonwealth*, 205 Va. 528, 532, 138 S. E. 2d 28, 31.

▆ The indictment in the present case is sufficient to charge common-law robbery. It appears from the testimony of both the petitioner and his counsel that the petitioner knew and fully understood that under the indictment he was charged with that offense. It further appears from petitioner's own testimony that he admitted to his counsel that he was guilty of the charge, that there were no witnesses who could be called in his behalf, and that he desired to plead guilty.

The recorded judgment of the trial court shows that the petitioner pleaded guilty to the indictment "in person" and that the court was satisfied that he "fully understood the nature and effect of his plea." Moreover, the recorded judgment further recites that after "having heard the evidence" the court found the petitioner "guilty of a felony (larceny and assault) as charged in the indictment." Since the order found the petitioner guilty "as charged in the indictment," the description of the charge as "larceny and assault" should be discarded as surplusage. This is especially so since the charge of larceny had been withdrawn or nol prossed. As the court pointed out in its decision denying the writ, the petitioner's own testimony showed that he "knew he was being tried for robbery rather than larceny." Thus, the alleged duplicity in the indictment is entirely immaterial.

*Smyth* v. *White*, 195 Va. 169, 77 S. E. 2d 454, is pertinent here. In that case we held that where an accused knew that he was being tried for robbery and fully understood the purport of his written plea of guilty, no constitutional right was invaded even if the indictment were defective. See also, *Cunningham* v. *Hayes*, 204 Va. 851, 134 S. E. 2d 271.

▆ In refusing to grant the writ of habeas corpus, the lower court expressly found that there was no evidence of lack of effective assistance of counsel at the criminal trial. It pointed out that petitioner's counsel was a competent attorney, that he fully investigated the case, found out from the petitioner himself and others involved that he had no defense to the charges, explained to him his constitutional rights, and effected with the Commonwealth's attorney a compromise, with the result that the charge of larceny was withdrawn and the petitioner received the minimum punishment for robbery by violence

or intimidation then prescribed by the statute. We fully agree with this conclusion.

▋ The petitioner's final contention is that the evidence submitted at the criminal trial was insufficient to sustain a conviction of armed robbery. It is well settled that such a contention must be asserted in a direct appeal from, or writ of error to, the original judgment and cannot be made by a collateral attack on that judgment in a habeas corpus proceeding. *Smyth* v. *Bunch*, 202 Va. 126, 131, 132, 116 S. E. 2d 33, 37, 38; *Willoughby* v. *Smyth*, 194 Va. 267, 272, 72 S.E.2d 636, 639; 39 C. J. S., Habeas Corpus, § 29-j, p. 518.

The judgment is

*Affirmed.*

SPRATLEY, J., dissenting:

As I see it, the controlling question on this appeal is whether the judgment order under which Pettus is being restrained of his liberty is invalid, null and void. The indictment is sufficient in form and substance to charge common law robbery. However, the evidence does not justify a conviction for robbery, and the judgment order fails to show that Pettus was found guilty of that crime. The issue is raised by petitioner's assignment of error that "there could be no conviction for forceful or strongarmed (sic) robbery, since the taking of the shotgun occurred prior to the assault upon the guard."

The evidence is not in conflict. It shows that Pettus was a convict "trusty" working with a detail of the State Convict Road Force on November 15, 1957. The detail was in charge of W. F. Harris, an armed guard. Questioned by the Attorney for the Commonwealth, Harris testified as follows:

"I was sitting there—we were eating lunch—I had the shotgun laying across my lap, and I was eating. He (Pettus) was sitting over there to the side of me. The trusty (Pettus) was sitting to the side of me, the gang was then down in front of me, and of course, I was watching them. The gun went out of my lap and I looked back and he had it. He jumped back, threw the gun on me and told me not to move. I jumped up and grabbed the gun and before I could get it away from him—Scruggs (another convict) took the service gun and went to the truck and forced the truck driver and foreman out, and Frank Dale went to the other side of the truck, got in, and all five of them left."

The above testimony clearly shows that the taking of the shotgun from Harris was accomplished before any violence toward or intimidation of Harris occurred. All that it does show is that a shotgun was stolen, and that subsequently under the presentation of the firearm and a threat, the prisoner escaped,—a larceny followed by an assault. The guard could not have been put in bodily fear prior to the theft of the shotgun, and he does not claim that he was, because the gun was taken by stealth.

In a long line of cases we have repeatedly held that to constitute the offense of common law robbery, there must be a *"taking* with intent to steal, *of the personal property of another* from his person or in his presence, *against his will, by violence or intimidation."* (Emphasis added.) *Houston* v. *Commonwealth,* (1890) 87 Va. 257, 264, 12 S. E. 385, 387; *Butts* v. *Commonwealth,* (1926) 145 Va. 800, 811, 133 S. E. 764; *Maxwell* v. *Commonwealth,* (1936) 165 Va. 860, 864, 183 S. E. 452, 454; *Falden* v. *Commonwealth,* (1937) 167 Va. 549, 554, 189 S. E. 329; *Fleming* v. *Commonwealth,* (1938) 170 Va. 636, 639, 196 S. E. 696; *Jones* v. *Commonwealth,* (1939) 172 Va. 615, 618, 1 S. E. 2d 300; *Mason* v. *Commonwealth,* (1958) 200 Va. 253, 254, 105 S. E. 2d 149; 46 Am. Jur., Robbery, § 19, page 148. See Annotations to Virginia Code, 1950, § 18-163; 1960 Repl. Vol. § 18.1-91 and 1966 Cum. Supp. § 18.1-91.

Also see *Pierce* v. *Commonwealth,* 205 Va. 528, 532, 138 S. E. 2d 28.

In *Maxwell* v. *Commonwealth, supra,* 165 Va., at page 864, and *Fleming* v. *Commonwealth, supra,* 170 Va., at page 639, we said:

"Therefore, to constitute the crime of robbery in Virginia, all of the elements essential at common law must exist."

In *Mason* v. *Commonwealth, supra,* 200 Va., the defendant, Mason, was charged with the robbery of one, Grimes, "by violence and intimidation, and by the threat and presentation of firearm." The evidence showed that Mason broke and entered a storeroom of Grimes and picked up a portable television set, which he handed to a confederate. Grimes appeared on the scene and hit Mason with a board. Mason then threw a radio at Grimes, fired four times at the latter with a pistol, and then fled. Upon that evidence, he was found guilty of common law robbery. On appeal, the late Mr. Justice Miller said this in 200 Va., *supra,* at pages 255 and 256:

"The precise question presented is whether the violence toward or intimidation of Grimes by throwing the radio at him or by the threat and presentation of firearms preceded or was contemporaneous

with the taking, or whether the violence toward or intimidation of Grimes was subsequent to the taking. If the violence or intimidation preceded or was concomitant with the taking, the offense of robbery is established; if the taking was accomplished before the violence toward or intimidation of Grimes, then it was not robbery.

"The following general statement found in 46 Am. Jur., Robbery, § 19, p. 148, is pertinent to the question before us:

" 'The violence or intimidation must precede or be concomitant or contemporaneous with the taking. Hence, although the cases are not without conflict, the general rule does not permit a charge of robbery to be sustained merely by a showing of retention of property, or an attempt to escape, by force or putting in fear. The above doctrine has found frequent application where force or intimidation has been exercised after the property came into the defendant's hands by stealth * * *.' "

In the opinion of the majority, it is said that: "In some manner not clearly shown, Pettus got possession of the gun from the guard, * * *." According to the evidence of the guard, the sole witness to the occurrence, the shotgun was taken without violence or intimidation, when he was looking the other way. The Commonwealth suggests in its brief that the shotgun was obtained by trickery. In the argument, it is suggested that the attention of the guard was directed to a rabbit in the near vicinity, and when the guard turned to look at the rabbit, Pettus took the shotgun. Neither in the evidence, nor in the suggestions, does it appear that violence, intimidation or putting the guard in bodily fear, was present before the firearm was stolen.

In *Johnson* v. *Commonwealth*, (1873) 24 Gratt. (65 Va.) 555, 561, it was held that where there was a variance between the allegata and the probata in a judgment convicting the accused of grand larceny, the judgment was erroneous; and, therefore, null and void.

Here, it is contended that the error was harmless because Pettus pleaded guilty to the indictment for robbery. Pettus, 34 years old and uneducated, knew no more as to what constituted the elements of common law robbery than a billy goat or the rabbit which was said to have been his innocent accomplice.

The record indicates that there was considerable confusion in the minds of the court officials as to the nature of the offense charged in the indictment. On the back of that instrument there is the endorsement "Larceny and Assault," and the caption of the judgment order reads "Felony—Larceny and Assault." The judgment order recites

that the court found Pettus "guilty of a felony (larceny and assault) as charged in the indictment." The word "robbery" is not mentioned in the indictment nor in the judgment order. Cf. *Taylor* v. *Commonwealth*, 207 Va. 326, 332, 150 S. E. 2d 135. It is a maxim of construction that the mention of one thing implies the exclusion of another. The above record may account for the contention of counsel for Pettus that the indictment "alleged two felonies in one count." However that may be, "larceny and assault" is unknown as an offense in Virginia, either as a misdemeanor or as a felony.

I hesitate to refer to the contention of Pettus that he was denied the aid of effective counsel at his trial upon the indictment for robbery. The facts that no exception was taken to the judgment of conviction, no appeal from the judgment, or writ of error was applied for by his court-appointed counsel, Overstreet, and that Pettus was not informed of his right to petition for an appeal or writ of error, speak more eloquently than words as to lack of effective legal assistance.

Since we are told in the brief of the Attorney General that the two-year sentence imposed on Pettus for escape was completed on May 2, 1961 and that the eight-year sentence imposed on him for robbery, which he is now serving, will expire on March 13, 1967, a decision of this case in his favor will not likely have any great effect so far as he is concerned. However, my purpose is to show my adherence to the definition of common law robbery long accepted by this Court.