**William Horace BRYANT, Petitioner,**

v.

**C. C. PEYTON, Superintendent of the Virginia State Penitentiary, Respondent.**

No. 66–C–19–C.

United States District Court
W. D. Virginia,
Charlottesville Division.

June 29, 1967.

Edward R. Slaughter, Jr., Gary C. Mc-Gee, McGuire, Woods & Battle, Charlottesville, Va., for petitioner.

Reno S. Harp, III, Asst. Atty. Gen. of Virginia, Richmond, Va., for respondent.

## OPINION AND JUDGMENT

MICHIE, District Judge.

Petitioner is now detained in the Virginia State Penitentiary pursuant to a judgment of the Circuit Court of Nelson County entered on July 3, 1963. At that time he was sentenced on two charges— one for the statutory rape of a thirteen year old girl and one for the attempted statutory rape of an eleven year old girl, the older girl's sister. He received sentences of twenty and ten years respectively on the two charges, the sentences to run consecutively. Though he had pled guilty, was tried and convicted on May 27, 1963 with respect to the rape of the older girl, sentencing was deferred

on that charge until July 3, 1963, at which time he was tried and convicted of the attempted rape charge following a plea of not guilty as to it. No appeal was taken from either of the two convictions or sentences.

His present petition for habeas corpus relief states five grounds which, according to him, make his detention unlawful: (1) ineffective assistance of counsel, (2) denial of the right to appeal, (3) conviction upon illegal, unlawful testimony, and untrue testimony, (4) denial of the right to a fair and impartial trial and (5) use of a coerced confession at his trial.

As required by 28 U.S.C. § 2254, petitioner has exhausted his state remedies. He was given a plenary hearing at the state level on May 18, 1965 in the Circuit Court of Nelson County. Relief was denied by the Circuit Court and by the Supreme Court of Appeals of Virginia. A federal plenary hearing was granted and held in this court on May 10, 1967 when petitioner was represented by two able court-appointed attorneys.

After consideration of all the evidence presented at the state plenary hearing and the hearing held before this court, I find that, of the five allegations made by petitioner, only those with respect to effective assistance of counsel and denial of the right to appeal have any merit. Examination of the factual context out of which these latter two contentions arise, however, reveals that petitioner is entitled to relief of a substantial nature.

William Horace Bryant was apprehended on May 5, 1963 by Deputy Sheriff Sullivan. He made a successful dash for his freedom shortly after he was taken into custody but decided to and did turn himself in the next day, May 6th. With the last of his funds, according to Bryant, he had his wife's mother hire an attorney. This attorney did not see Bryant until the morning of the preliminary hearing at which time he advised Bryant to plead not guilty to both charges and to keep his mouth shut. A few days later, for personal reasons, the attorney withdrew from the case. Bryant said he then asked the jail officials for an attorney. Deputy Sheriff Sullivan would not deny unequivocally that such a request had been made but intimated that it was unlikely, there having been one attorney located very close to the court house and jail who could have been contacted in such cases.

On May 22, 1963, without the benefit of counsel, Bryant signed a written "confession" subsequently introduced in the federal hearing as petitioner's exhibit #1. The statement, rambling and somewhat incoherent, gives a disjointed account of what happened on the day of the alleged rape and attempted rape. Though it could be argued that there is in this statement an implied admission that Bryant had intercourse with the older girl on the day the crime was supposed to have been committed, this implication is not at all crystal clear. Bryant said he does not remember being advised of his right to counsel when he made the statement but he does remember being told the statement could be used against him. He also claims that he was promised leniency before signing the statement but Sheriff Sullivan testified that this is untrue.

Five days after the confession was signed, on May 27, 1963, an attorney was appointed by the Nelson County Circuit Judge to represent Bryant. After conferring briefly with his client in the back of the courtroom, he advised him to plead guilty to the charge of raping the older girl and not guilty to the charge of attempted rape. According to the attorney, his advice was based on the short discussion with Bryant, Bryant's signed statement, and copies of statements made by the girls involved and by their mother. Arraignment was held the same day and Bryant pled as advised. The court accepted his plea of guilty and convicted Bryant on this charge but deferred sentencing until a probation report could be prepared. (Exhibit III of the state habeas corpus record—a court order dated May 27, 1963). Trial on the plea of not guilty was deferred until July 3, 1963.

Though some investigation of the circumstances surrounding the signing of Bryant's confession was made by court-appointed counsel through conversation with one police officer and Bryant, the attorney did not know how long after arrest the statement was given. He did learn that the statement was given before indictment. During his initial conversation with Bryant the attorney claims he learned "a lot more than was in the statement." Bryant told him that the older girl had been having intercourse with other men, that at one time when Bryant's common law wife (the girl's mother) was in the hospital, the girl came nude and got in bed with Bryant. Bryant apparently asked the attorney what he would have done had he been in a similar situation.

When asked whether he investigated the case, the attorney said he certainly did. He spent a couple of hours preparing for Bryant's defense. (State habeas corpus transcript p. 11). Presumably, a good deal, if not most, of this two hours was spent after May 27th after the accused had been tried and convicted of the rape charge. The attorney talked to Bryant during the week following his first conviction at least once and perhaps twice. He talked to the deputy sheriff and he talked to the prosecuting attorney. He did not talk to any witnesses and did not get in touch with three different people whom Bryant had indicated might have been of some help in the case, two Tyree brothers and a boy named Diehl. His reason for not interviewing these prospective defense witnesses was that he thought that they would be of little help. Bryant had said the Tyree brothers would give evidence about prior sexual promiscuity of the girls involved. The attorney thought this unlikely because the girls were under age. He presumed the Tyree brothers would be afraid of incriminating themselves. As for Diehl, the attorney thought talking to him would have been of little value since Bryant admitted he was probably asleep when the crimes were supposed to have occurred.

The reason given for the attorney's not having gone into the Gladstone community to investigate the case at its point of origin is that he had been furnished copies, by the police or the Commonwealth's Attorney's office, of statements made by the girls and their mother. And, of course, he had Bryant's statement.

■■ On July 3, 1963 when Bryant was sentenced to a total of thirty years imprisonment, he turned in open court to his attorney and requested that an appeal be taken. He was told that an appeal could not be taken unless he had substantial funds to pay for it. He was told in effect that even to think of appeal while in his poor financial position was foolish. Incidentally, he was also told that he had no grounds for taking an appeal. Under these circumstances, Bryant was not merely left passively uninformed about his right to appeal as an indigent, he was misled into thinking the opposite. Decisions of both the Fourth Circuit and the Virginia Supreme Court of Appeals have declared that such a situation warrants the granting of substantial relief. An indigent must be advised that he will be supplied all the necessary incidents of appeal free of charge. Failure to so advise him when he has inquired about appeal is treated as if it were a denial of his appeal. Magee v. Peyton, 343 F.2d 433 (4th Cir. 1965); Puckett v. State of North Carolina, 343 F.2d 452 (4th Cir. 1965); Clark v. Peyton, 207 Va. 444, 150 S.E.2d 533 (1966); Russell v. Peyton, 207 Va. 469, 150 S.E. 2d 530 (1966); Stokes v. Peyton, 207 Va. 1, 147 S.E.2d 773 (1966); Thacker v. Peyton, 206 Va. 771, 146 S.E.2d 176 (1966); Cabaniss v. Cunningham, 206 Va. 330, 143 S.E.2d 911 (1965).

■ Though respondent concedes that the foregoing cases probably dictate at least the granting of a belated appeal with respect to Bryant's conviction for attempted statutory rape, he contends that these cases are inapplicable to the conviction for statutory rape since Bryant entered a guilty plea as to it. Evidently this argument proceeds under the

assumption that in effect Bryant had no right to appeal a conviction which followed a plea of guilty. I have found no Virginia case so distinguishing between convictions based on pleas of guilty and those entered after pleas of not guilty. The absence of such a case may be proof in itself that courts have always assumed the opposite, that a convicted person can always appeal whether he has pled guilty or not. The statute authorizing appeal from a criminal conviction certainly does not distinguish cases in which guilty pleas have been entered from those where the accused has pled not guilty.

Section 19.1–282 of the Code of Virginia reads as follows:

A writ of error shall lie in a criminal case to the judgment of a circuit court of the judge thereof, * * * It shall lie in *any* case for the accused * * *. [Emphasis supplied]

It seems reasonable to think that the legislature would not have said a writ of error shall lie in "any" case for the accused if it had intended to preclude appeal by persons who have pled guilty.

Proof that the Virginia Supreme Court of Appeals assumes an accused can appeal from a judgment after having pled guilty can be found in Pettus v. Peyton, 207 Va. 906, 153 S.E.2d 278 (1967). There the defendant had pled guilty to two indictments. In answer to his post-conviction allegation that the evidence submitted at his criminal trial was insufficient to sustain a conviction of armed robbery, the majority said:

It is well settled that such a contention must be asserted in a direct appeal from, or writ of error to, the original judgment and cannot be made by a collateral attack on that judgment in a habeas corpus proceeding.

*Pettus,* supra, at 911, 153 S.E.2d at 281.

The dissent also assumed without discussing the question that Pettus had a right to appeal even though he had pled guilty. Justice Spratley said:

The facts that no exception was taken to the judgment of conviction, no appeal from the judgment, or writ of

error was applied for by his court-appointed counsel, * * * and that Pettus was not informed of his right to petition for an appeal or writ of error, speak more eloquently than words as to lack of effective assistance.

Id. at 914, 153 S.E.2d at 283.

Since it appears that the present petitioner, Bryant, had an absolute right to appeal whether he pled guilty or not and since he was denied his concomitant right to be so advised, I hereby conclude that he deserves at least an opportunity to appeal from both convictions.

He may deserve more, however. If he did not, as he alleges, receive effective legal assistance *before* conviction, he is entitled to a new trial. Naturally his case, like others of its kind, must turn on its own peculiar facts and circumstances.

The idea of what constitutes "ineffective representation" has changed considerably during recent years.

As the concept of the Sixth Amendment right has broadened to encompass the provision of counsel for indigents, so too the standards to which appointing courts and appointing counsel must adhere have become more exacting.

Fields v. Peyton, 375 F.2d 624, 628 (4th Cir.1967).

A look at some of these more exacting standards as they are presently viewed is necessary to determine whether petitioner received the minimum legal assistance required by our Constitution.

One of the essentials of providing an accused with adequate legal representation is sufficient time to prepare a defense. The Fourth Circuit has not hesitated to void a conviction where court-appointed counsel have not been given or have not taken the time deemed necessary for preparation. In doing so it has said:

Representation is not adequate and a trial does not meet the standard of fundamental fairness if a court-appointed attorney is not afforded an adequate opportunity to investigate and reflect upon his client's case.

Martin v. Commonwealth, 365 F.2d 549, 552 (4th Cir. 1966). Especially repugnant to the ideal of fundamental fairness is the one day indictment, designation of counsel and trial. See, e. g., *Martin*, supra; Turner v. State of Maryland, 318 F.2d 852 (4th Cir. 1963); Edgerton v. State of North Carolina, 315 F.2d 676 (4th Cir. 1963); Jones v. Cunningham, 313 F.2d 347 (4th Cir. 1963).

■ ▆▆▆▆ When a guilty plea is entered on the same day that a lawyer initially consults with his client, there may be a suspicion of neglect or laziness on the part of the attorney or that the guilty plea was prompted by the pressure of time preventing full preparation of a defense. See Braxton v. Peyton, 365 F.2d 563, 564 (4th Cir. 1966) which cites *Martin,* supra, *Jones,* supra, and *Edgerton,* supra, for this proposition. Actually there may be a presumption rather than mere suspicion of such inadequacy under these circumstances.

> [W]hen the initial consultation between a court-appointed attorney and his client occurs only a short time before the trial, "[n]ormally, *in the absence of clear proof that no prejudice resulted,* [the court] should be obliged to treat the lawyer's representation as inadequate and the trial as falling short of the standards of due process guaranteed by the Fourteenth Amendment." Turner v. State of Maryland, supra, 318 F.2d at 854 (4th Cir. 1963).

This presumption shifts the burden of proving lack of prejudice to the state. Twiford v. Peyton, 372 F.2d 670, 673 (4th Cir. 1967).

It is contended that though Bryant's attorney advised his client to plead guilty to the statutory rape charge the same day the attorney was appointed after no more than a fifteen minute discussion with his client, such action did not amount to inadequate representation. Respondent points out that at the time of the appointment, Bryant had already confessed, copies of statements made by the alleged rape victims were furnished Bryant's counsel, and that Bryant in a discussion with the attorney admitted his guilt. The weakness of this type argument is demonstrated by Jones v. Cunningham, supra, a case particularly analogous to the one at bar.

In *Jones* a full confession was in the hands of the police by the time counsel was appointed. This is also true in Bryant's case. Three days had intervened between arrest and the giving of Jones' confession. Fourteen days elapsed between Bryant's arrest and his confession. The first time Jones talked to his attorney was on the morning that the prisoner was arraigned and tried. Jones admitted his guilt to his attorney at that time. Bryant did not talk to his attorney until the day he was arraigned and tried on the rape charge. He, too, gave his attorney the impression that he was guilty the morning of the trial.

In holding that Jones did not receive effective assistance of counsel, the Court of Appeals said, among other things:

> * * *, [I]t was a matter of record that three days intervened between his arrest and confession, a suspicious factor which demanded further probing by the lawyer.

*Jones,* supra, 313 F.2d at 351.

Not three, but fourteen days elapsed between Bryant's arrest and his confession. Any distinction between the two cases based on this fact obviously cuts in favor of Bryant, not against him.

Concerning Jones' plea of guilty, the court had this to say:

> We cannot acquiesce in the suggestion that because Jones told his court-appointed attorney that he was guilty there was nothing else for the lawyer to do but to plead him guilty and hope for a light sentence. * * *

> Of course, it is not for the lawyer to fabricate defenses, but he does have an affirmative obligation to make suitable inquiry to determine whether valid ones exist. Such a duty is imposed for the salutory reason that "[p]rior to trial an accused is entitled to rely upon his counsel to make an independ-

ent examination of the facts, circumstances, pleadings and laws involved and then to offer his informed opinion as to what pleas should be entered." Von Moltke v. Gillies, 332 U.S. 708, 721, 68 S.Ct. 316, 322, 92 L.Ed. 309 (1948).

*Jones,* supra, 313 F.2d at 352–353.

Respondent would have the court distinguish between the *Jones* case and Bryant's because the former involved criminal charges inherently more complex than the charge of statutory rape. Certainly as a general rule more defenses would be available for the charges of breaking and entering with intent to commit larceny and larceny itself (the crimes with which Jones was charged) than would be available for charges involving statutory rape. But from this premise it does not necessarily follow that no defenses are available or that further investigation is useless when the crime involved is relatively simple. Bryant's attorney was in no position to determine available defenses without having made a more thorough investigation of the facts surrounding the alleged crimes.

The record indicates that perhaps certain witnesses could have been called in Bryant's behalf. These witnesses may not have been of much value but they were never contacted by Bryant's attorney. Furthermore, there is testimony in the record, far-fetched though it may sound, that Bryant did not know the nature of the crime with which he was charged. This man of a sixth grade level of education claims that his attorney told him that one need not engage in the act of sexual intercourse to be guilty of carnal knowledge. Whether by inadvertence or for some other reason, at the federal habeas corpus hearing, the attorney who represented Bryant during his substantive trial never refuted this testimony.

 Though factors such as the failure to contact potential defense witnesses, the failure to talk to anyone except the prosecuting attorney and the police, and the failure to investigate in greater detail the circumstances surrounding both the crime and the confession, when considered separately, may seem incidental, they take on a more serious aspect when considered together. Moreover, there is another point which demonstrates a serious deficiency in the quality of representation afforded Bryant. The defense never presented any evidence showing the prior promiscuity of the girls involved. This omission was made with the full knowledge on the attorney's part that it was highly likely that the girls had been promiscuous and were not of chaste character prior to the alleged rape and attempted rape. The attorney testified that he did not bother to present such evidence because in his opinion it is immaterial when the prosecutrix is under the age of consent. He is correct as far as exoneration of the accused is concerned but it has long been the rule in Virginia that the fact of prior unchaste character of the prosecutrix may be presented to mitigate punishment. Dotson v. Commonwealth, 170 Va. 630, 196 S.E. 623 (1938). This is true even after a plea of guilty is entered. Hobsen v. Youell, 177 Va. 906, 15 S.E.2d 76 (1941).

Only recently in Whitaker v. Warden, 362 F.2d 838 (4th Cir. 1966) where the defendant was charged with statutory rape, the Court of Appeals partially based its holding of ineffective assistance of counsel on the attorney's failure to present evidence of the prosecutrix's sexual background. The court said on page 840:

> Moreover, we think that there can be no doubt that evidence of promiscuous sexual misbehavior on the part of the victim would have been relevant to a determination of the proper sentence to be imposed. While the crime is revolting and reprehensible under any circumstances, it might be considered less so if the girl involved was not an innocent child, but rather one who was sexually wise and experienced far beyond her years. In the instant case, Whitaker desperately needed the benefit which might derive from the dis-

**360**

closure of any mitigating factors. His crime was aggravated by the tender age and her familial relationship with him. Yet, counsel appears to have made no attempt whatsoever, to apprise the court of the girl's background, which his testimony strongly indicates he knew to be bad. Had he brought this information to the court's attention, Whitaker's punishment might have been less severe.

■ Based on the spirit with which decisions like Jones v. Cunningham were rendered, I feel compelled to void petitioner's conviction for statutory rape. The Commonwealth has not made a clear showing that the late appointment of Bryant's attorney was not inherently prejudicial. This failure on the state's part to meet its burden of proof coupled with additional evidence that Bryant's attorney failed to investigate certain prospective witnesses for the defense, failed to interview the prosecuting witnesses, and failed to investigate evidence of the girls' prior unchastity and present such evidence in mitigation of punishment, leaves no suitable alternative.

■ With the exception of the presumption which arises from late appointment, the same reasoning applies to Bryant's conviction for attempted statutory rape. Though trial was deferred for one week as to the attempted rape charge, Bryant's attorney made no significant preparation in addition to what had been done with respect to the other charge. Failure to present evidence in mitigation of punishment may have been especially damaging in the July 3rd trial. Even Bryant's attorney admitted that the ten year sentence for the attempt conviction seemed harsh.

For the foregoing reasons, I conclude that both convictions of petitioner should be voided. Accordingly, it is ordered that the request for a writ of habeas corpus is hereby granted. Effectiveness of the release order will be stayed for sixty days from the date of this opinion to allow the Commonwealth to retry this petitioner or to appeal to the Fourth Circuit Court of Appeals.